[No. B236246. Second Dist., Div. Three. Mar. 20, 2013.]

THE PEOPLE ex rel. KAMALA D. HARRIS, as Attorney General, etc., Plaintiff and Appellant, v.
ROBERT A. RIZZO et al., Defendants and Respondents.

## Counsel

Kamala D. Harris, Attorney General, Douglas J. Woods, Assistant Attorney General, Peter A. Krause and Mark R. Beckington, Deputy Attorneys General, for Plaintiff and Appellant.

Law Offices of James W. Spertus, James W. Spertus, Ezra D. Landes and Amy M. Hinkley for Defendant and Respondent Robert A. Rizzo.

Aleshire & Wynder, David J. Aleshire, Anthony R. Taylor and Michael C. Huston for Defendant and Respondent City of Bell.

Law Offices of Russell G. Petti and Russell G. Petti for Defendant and Respondent Pier'angela Spaccia.

Kaye, McLane & Bednarski and Ronald Kaye for Defendant and Respondent George Cole.

Stanley L. Friedman for Defendant and Respondent Oscar Hernandez.

Byrne & Nixon, Daniel Nixon and Jennifer Derwin for Defendant and Respondent Teresa Jacobo.

Law Office of Leo J. Moriarty and Leo J. Moriarty for Defendants and Respondents Victor Bello and George Mirabal.

Paul Hastings, Thomas P. O'Brien, Katherine F. Murray and Nicholas J. Begakis for Defendant and Respondent Randy G. Adams.

## OPINION

**CROSKEY, J.**—When it appears that a charter city is under the control of individuals who are looting the city's coffers for their own benefit, can the Attorney General, on behalf of the city, bring an action against the allegedly corrupt individuals, to remove the city from their control and require them to pay restitution to the city? We conclude that the Attorney General may bring such an action, and seek recovery from the corrupt individuals to the extent their acts were unauthorized.

This case concerns the City of Bell (City), a charter city with a population of 38,250. It was discovered that the chief administrative officer of the City, the assistant chief administrative officer, and five City council members were receiving salaries well in excess of the amounts paid similar individuals in similarly sized cities, and that these seven individuals went to great lengths to conceal their salaries from public knowledge. It was also revealed that the chief administrative officer had hired an individual to serve as chief of police at a high salary; the terms of his employment contract were structured so as not to disclose the true extent of his salary.[1]

When the true salaries of these individuals were made public, a scandal erupted. It became clear that legal action should be taken. However, as the City was still under the control of the apparently corrupt officials, the City brought no action against them. Therefore, the Attorney General brought the instant action, challenging the excessive salaries and seeking reimbursement for the City. Shortly thereafter, the district attorney filed criminal proceedings.[2] Ultimately, following a recall election, city management changed. Although the City had initially opposed the Attorney General's pursuit of this action, the City now fully supports the Attorney General's right to bring this action on its behalf.

Defendants demurred to the operative complaint, arguing, among other things, the Attorney General's lack of standing, immunity for legislative acts,

---

[1] The contract provided that the chief of police would be paid $17,577 "per pay period." It did not define "pay period," which was, in fact, every two weeks.

[2] No criminal proceedings were filed against the chief of police.

and the doctrine of separation of powers. The trial court sustained the demurrers of defendants without leave to amend,[3] and dismissed the action. The trial court concluded that the allegedly excessive salaries were legislative acts for which defendants were immune. Relying on the doctrine of separation of powers, the court concluded that the judiciary had no jurisdiction to interfere with the city council's legislative decisions regarding compensation.

On appeal, we conclude that the Attorney General does have standing to pursue this action on behalf of the City. We further conclude that, although separation of powers and legislative immunity bar pursuit of this action with respect to acts *within the discretion* of City officials, these doctrines do not prevent the action from proceeding with respect to defendants' allegedly ultra vires acts. We therefore hold that the trial court erred in sustaining the demurrers without leave to amend. Finally, we address the trial court's denial of the Attorney General's motion to stay proceedings in this case pending resolution of the criminal actions against defendants. While we agree that the trial court did not abuse its discretion in denying the motion, we note that subsequent events may justify reconsideration of the motion.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Allegations of the Complaint

The operative complaint[4] focuses on the excessive salaries and benefits paid defendants, as well as efforts to hide those salaries and benefits from public knowledge. We discuss the allegations against each defendant briefly.

Defendant Robert A. Rizzo was the chief administrative officer of the City from May 1993 through at least July 2010. Under section 603 of the City

---

[3] The trial court granted leave to amend a single cause of action; the Attorney General, however, elected not to amend.

[4] The operative complaint is the first amended complaint. The council member defendants argue that the trial court did not abuse its discretion in denying the Attorney General leave to amend the operative complaint on the basis that the Attorney General already had one opportunity to amend to cure the errors in her complaint. We disagree. In response to the Attorney General's initial complaint, Rizzo filed a demurrer, in which Pier'angela Spaccia joined. At the hearing on the demurrer, the trial court expressed concern regarding the Attorney General's right to pursue this action, but noted that Rizzo's demurrer was procedurally inadequate on all grounds except uncertainty. As a result, the trial court overruled the demurrer to the extent it raised any substantive issues, and sustained the demurrer (with leave to amend) only with respect to the ground of uncertainty. The Attorney General therefore filed a first amended complaint responding to the trial court's order sustaining the demurrer for uncertainty. As the trial court had *not* sustained Rizzo's demurrer on the ground that the Attorney General lacked standing, the Attorney General was under no obligation to amend the complaint to address this ground. As such, when the trial court subsequently sustained the demurrers to the first amended complaint without leave to amend, the Attorney General had not been granted an opportunity to amend to address any purported defect other than uncertainty.

Charter, the chief administrative officer "shall be paid a salary commensurate with the responsibilities of chief administrative officer of the City." Rizzo's base salary in 2010 was $787,500. This salary is allegedly "over three times what cities of comparable population in the Los Angeles region pay to their city managers on average." In 2008, when other city employees were being laid off, Rizzo received five new employment contracts providing for 12 percent annual increases to his salary. Rizzo's 2008 contracts provided that he would accrue service credit with the California Public Employees' Retirement System at double the normal rate, allowing for double retirement benefits. In 2008, Rizzo was provided with 107 vacation days and 36 days of sick leave (out of approximately 250 working days) per year. In 2009, Rizzo sold back over 130 days of leave time for over $360,000, bringing his salary for that year to a total in excess of $1.1 million. The Attorney General also alleged that Rizzo's 2008 contracts were procedurally unauthorized; the contracts were not approved by the city council; instead, they were signed by one council member, who signed as the purported mayor. However, that council member was not the mayor at the time.

Defendant Pier'angela Spaccia was hired by Rizzo, first as assistant to the chief administrative officer, then as assistant chief administrative officer. In 2010, her base salary was $336,000. This amount is more than 40 percent higher than the salary for city managers (not *assistant* city managers) in the Los Angeles region with populations comparable to that of the City. In 2008, when other city employees were being laid off, Rizzo approved a contract providing Spaccia with a 20 percent raise and automatic 12 percent increases thereafter. Like Rizzo, Spaccia was granted 143 days of vacation and sick leave per year, which she was permitted to sell back to increase her pay. In 2009, she sold back leave time for nearly $175,000.

Defendants Oscar Hernandez, Teresa Jacobo, George Mirabal, Victor Bello, and George Cole (collectively, Council member defendants) were council members (and some, at times, served as mayor) of the City. Under section 502 of the City Charter, council members "shall receive compensation for their services as may be prescribed by ordinance or resolution, but with respect to service as a Council member not to exceed the amount which Council Members of general law cities of similar population would receive under State law." Under state law, a city with a population between 35,000 and 50,000 shall pay its council members no more than $400 per month.[5]

---

[5] Annual 5 percent increases are permissible. (Gov. Code, § 36516, subd. (a)(4).)

(Gov. Code, § 36516, subd. (a)(2)(B).) In 2010, the Council member defendants who were still on the City Council were to receive $8,000 per month in salary.[6]

Randy Adams[7] was hired by Rizzo as the police chief of the City in May 2009. Adams had a base salary in excess of $457,000, an amount which "grossly exceeds" salaries of police chiefs of cities of comparable population in the Los Angeles region. Adams was also granted "excessive and wasteful benefits," including lifetime health insurance benefits for his dependents. Rizzo also agreed, on behalf of the City, to support Adams's claim for medical disability retirement upon his retirement from the City's employ. This gives rise to the inference that Rizzo hired Adams at an excessive salary to perform a job which Rizzo already believed Adams was, at least in part, disabled from performing.

It was further alleged that defendants defrauded the public as to the extent of their compensation. Specifically, it was alleged that the Council member defendants passed an ordinance which was titled as an ordinance "*limiting* compensation for members of the City Council" (italics added), when, in fact, the ordinance nearly *doubled* their compensation. We refer to this as the "misleading ordinance." Similarly, it was alleged that in September 2008, at Rizzo's direction, a memorandum was prepared to be given by the city clerk to any member of the public who inquired about the salaries of city officers and employees. The memorandum falsely stated that the Council member

---

[6] On appeal, three of the Council member defendants (Cole, Hernandez and Jacobo) requested judicial notice of certain resolutions and ordinances which designated the members of the City Council as the members of various commissions and authority boards. The argument, apparently, is that some of their pay was earned not for serving on the City Council but for serving on these commissions and boards. We note that Government Code section 36516, which governs the salary to be paid council members of general law cities, provides, "Unless specifically authorized by another statute, a city council may not enact an ordinance providing for compensation to city council members in excess of that authorized [as above]. For the purposes of this section, compensation includes payment for service by a city council member on a commission, committee, board, authority, or similar body on which the city council member serves. If the other statute that authorizes the compensation does not specify the amount of compensation, the maximum amount shall be one hundred fifty dollars ($150) per month for each commission, committee, board, authority, or similar body." (Gov. Code, § 36516, subd. (c).) The City paid its council members well in excess of $150 per month for serving on various commissions and authorities. It is impossible to say for certain how much the council members were paid, as the resolutions indicate amounts to be paid "per pay period," without defining "pay period." As other evidence suggests these City officials defined a "pay period" as two weeks, it appears that, in fiscal year 2009–2010, the City may have paid its council members in excess of $1,375 per month *per board* for their service on the public financing authority board, the surplus property authority board, and the community housing authority board. (City Res. Nos. 2005-34, 2005-35, 2005-36.)

[7] Adams is in a somewhat different position from the other defendants; he contracted for and received the allegedly excessive salary, but did not approve his own salary—or that of anyone else—on behalf of the City.

defendants were paid $673 per month, when they were actually paid $7,600 per month, and that Rizzo was paid $15,478 per month, when he was actually paid over $52,000 per month. We refer to this as the "misleading memorandum."[8]

Finally, the complaint contained allegations relating to the City's supplemental retirement plan, which provided retirement benefits "to a small group of City officers and employees," including defendants. It was alleged that Rizzo and Spaccia modified the terms of the retirement plan to provide "unique benefit[s] to them that [were] not available to other" members of the retirement plan.

### 2. Causes of Action

Based on the above alleged facts, the Attorney General alleged the following causes of action. First, the Attorney General pled a cause of action against all defendants for waste of public funds under Code of Civil Procedure section 526a,[9] with respect to the excessive compensation paid all defendants. It will be critical to our analysis whether the ordinances and employment agreements were within the discretion of the City Council and chief administrative officer or were, instead, unauthorized ultra vires acts. In this respect, the Attorney General's complaint is not clear. That is to say, the Attorney General alleged that the actions of defendants in approving the ordinances and contracts constituted *both* abuses of discretion *and* unauthorized ultra vires acts.

The cause of action for waste was the only cause of action in the complaint which named the City itself as a defendant. In connection therewith, the Attorney General sought appointment of a receiver to facilitate operation of the City. The Attorney General did not seek damages from the City, and, in fact, sought an order requiring the other defendants to make restitution to the City for their excess compensation.[10]

The second cause of action, against Rizzo and the Council member defendants, was for negligence in authorizing the wasteful expenditures of

---

[8] In addition, when Adams was negotiating his employment contract with Spaccia, Adams inserted a clause specifying the number of pay periods per year. Spaccia instructed him to remove the clause, stating, "[w]e have crafted our Agreements carefully so we do not draw attention to our pay. The word Pay Period is used and not defined in order to protect you from someone taking the time to add up your salary." Adams agreed to remove the pay period definition from his contract.

[9] As we shall discuss, Code of Civil Procedure section 526a permits a taxpayer to bring an action to enjoin government waste.

[10] For this reason, when we refer to "defendants," we mean the individual defendants only, not the City.

public funds. It alleged that the Council member defendants negligently failed to exercise due care and reasonable diligence in approving the employment contracts of Rizzo and Spaccia. It similarly alleged that Rizzo failed to exercise due care and reasonable diligence in approving the employment contracts of Spaccia and Adams. Although this cause of action did not specifically allege that the excessive salaries of Rizzo, Spaccia, and Adams were *unauthorized* expenses, it incorporated by reference all earlier allegations.

The third cause of action, against Rizzo and the Council member defendants, alleged fraud in connection with the misleading ordinance. The fourth cause of action, against Rizzo alone, alleged fraud in connection with the misleading memorandum.

The fifth cause of action, against Rizzo and Spaccia, alleged violation of Government Code section 1090, which prohibits city officers from entering into contracts in which they have a personal financial interest. The Attorney General alleged that Rizzo and Spaccia violated Government Code section 1090 by their modification of the City's supplemental retirement plan to "create[] particularized benefits to themselves."

The sixth cause of action, against all defendants, alleged breach of fiduciary duty.[11] Specifically, defendants were alleged to have "breached their fiduciary duties to the City and its citizens" by awarding themselves excessive and wasteful compensation. They were also alleged to have breached their fiduciary duties by deceiving the public as to their full compensation.

### 3. *Motion for a Stay*

Shortly after the trial court ruled on Rizzo's demurrer to the initial complaint, the Attorney General and the district attorney (who was not a party) jointly moved to stay this action pending resolution of the criminal proceedings against Rizzo, Spaccia, and the Council member defendants. They argued that a stay was appropriate for three reasons: (1) defendants were improperly seeking civil discovery for the benefit of their criminal defenses; (2) conservation of judicial resources; and (3) defendants were invoking their Fifth Amendment privilege against self-incrimination in civil discovery.

The trial court denied the motion, on the basis that the situation was entirely of the Attorney General's own making, in that this action was

---

[11] The cause of action also alleged violation of public trust. "The public trust doctrine generally concerns the preservation of certain natural public resources, not employment contracts." (*Lucas v. Santa Maria Public Airport Dist.* (1995) 39 Cal.App.4th 1017, 1025 [46 Cal.Rptr.2d 177].) We therefore focus our discussion of this cause of action on the breach of fiduciary duty allegations.

brought when the Attorney General knew that defendants would be asserting their Fifth Amendment privilege.[12] As to any issues regarding potential abuse of the civil discovery process, the Attorney General and district attorney conceded at the hearing on the motion that there had not yet been any violations of criminal discovery rules, only a potential for such violations. The trial court indicated that it would properly deal with any specific discovery issues if and when they arose. Ultimately, the trial court concluded that the Attorney General could choose to dismiss the instant action without prejudice and refile it after the criminal proceedings were resolved.[13]

### 4. *Demurrers*

All defendants demurred to the operative complaint.[14] Taken together, they raised the following arguments: (1) the Attorney General lacks standing, both under Code of Civil Procedure section 526a and in general,[15] to pursue this complaint; (2) the action is barred because the Attorney General does not allege compliance with the Tort Claims Act; (3) the doctrines of legislative immunity and separation of powers prevent judicial review of a city council's properly enacted ordinances regarding compensation; (4) Rizzo and the council members have statutory immunity for acts taken within their discretion; and (5) the absolute privilege of Civil Code section 47, subdivision (a) and the legislative privilege of Civil Code section 47, subdivision (b) bar the fraud causes of action. Defendants also raised specific challenges to the individual causes of action.

With respect to every cause of action except the fifth, for violation of Government Code section 1090, the trial court sustained the demurrers without leave to amend. The court concluded that the amount of reasonable compensation paid City officials and employees is entrusted to the legislative body of the City, and the doctrines of separation of powers and legislative immunity prevented court intervention on the issue. At the hearing on the

---

[12] Indeed, the court noted that four of the defendants had invoked the privilege in interviews sought by the Attorney General before the Attorney General had even filed this action.

[13] At the hearing on the motion, the Attorney General raised potential statute of limitation issues with that course of action. The trial court found that these concerns were not sufficiently concretely presented.

[14] Two of the Council member defendants did not initially demur; they filed their demurrers after the trial court had sustained the demurrers of the other defendants. Their demurrers were then sustained on the same bases as those of their codefendants.

[15] Rizzo argues that establishing the Attorney General lacks standing under Code of Civil Procedure section 526a establishes that the Attorney General lacks standing to pursue *all* causes of action in the complaint, as they are all based on the waste of public funds. The conclusion does not follow. That a plaintiff may lack standing to bring a cause of action under a particular statute does not mean the plaintiff lacks standing under another statute or the common law.

motion, the Attorney General argued, "we have not only alleged that [the compensation] is wasteful and excessive, we've alleged that it's illegal." Moreover, the City noted that information had since been discovered that some of Rizzo's employment contracts were backdated and never approved by the city council. If true, this would establish that the contracts were not only excessive but unauthorized. Nonetheless, the trial court concluded that the Attorney General alleged only excessive compensation approved by ordinance, which triggers legislative immunity. The court found this issue dispositive of all causes of action except violation of Government Code section 1090, and therefore did not reach the issue of standing with respect to anything but enforcement of Government Code section 1090. Concluding that the Attorney General had standing to enforce the statute, but that the Attorney General did not clearly identify the contract purportedly made in violation of the statute, the trial court granted leave to amend that single cause of action.

The Attorney General elected not to amend the sole remaining cause of action. An order of dismissal followed. The Attorney General filed a timely notice of appeal.

### 5. Ongoing Proceedings

While the order of dismissal finally disposed of all causes of action brought by the Attorney General, it was not the end of the action. Rizzo had brought a cross-complaint against the City, seeking, among other things, an order requiring the City to provide him a defense to the criminal actions pending against him. The City had also filed a cross-complaint against Rizzo; the operative pleading alleged causes of action for intentional misrepresentation, breach of the covenant of good faith and fair dealing, violation of Government Code section 1090, rescission and restitution of money wrongfully obtained, and declaratory relief. According to the City, all of the causes of action pending between Rizzo and the City, except Rizzo's cause of action for the City to defend him in the criminal actions, have been stayed pending resolution of the criminal charges against him.

### ISSUES ON APPEAL

We first consider whether the Attorney General had standing to bring this action. The Attorney General and the City both argue that the Attorney General brought the action on behalf of the City. We accept this argument and conclude the Attorney General had the power to bring this action on the City's behalf. As such, we reject any contention that the Attorney General had to comply with the Tort Claims Act in order to pursue this action on behalf of the City. Second, we turn to the issues of legislative immunity, separation of powers, and discretionary act immunity. We conclude that these

doctrines immunize acts within legislative (or executive) discretion, but not ultra vires acts. As the Attorney General alleged both types of acts, we conclude the immunity does not bar the complaint in its entirety, and the Attorney General should have been granted leave to amend to better allege (if the Attorney General could honestly do so) unauthorized acts. Third, we conclude that the Civil Code section 47, subdivision (b) legislative privilege applies to the cause of action for fraud based on the misleading ordinance, but not the cause of action for fraud based on the misleading memorandum. Fourth, we discuss the causes of action alleged, and related causes of action which the Attorney General may be able to allege if leave to amend is granted. Fifth, we conclude the trial court did not err in denying the stay, but note that changed circumstances may justify a reconsideration of that ruling.

## DISCUSSION

### 1. Standard of Review

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) "To meet [the] burden of showing abuse of discretion, the plaintiff must show how the complaint can be amended to state a cause of action. [Citation.] However, such a showing need not be made in the trial court so long as it is made to the reviewing court." (*William S. Hart Union High School Dist. v. Regional Planning Com.* (1991) 226 Cal.App.3d 1612, 1621 [277 Cal.Rptr. 645].)

### 2. The Attorney General May Pursue This Action on Behalf of the City

California Constitution, article V, section 13 provides, "Subject to the powers and duties of the Governor, the Attorney General shall be the chief law officer of the State. It shall be the duty of the Attorney General to see that the laws of the State are uniformly and adequately enforced." "The attorney-general, as the chief law officer of the state, has broad powers derived from

the common law, and in the absence of any legislative restriction, has the power to file any civil action or proceeding directly involving the rights and interests of the state, or which he deems necessary for the enforcement of the laws of the state, the preservation of order, and the protection of public rights and interests. [Citations.]" (*Pierce v. Superior Court* (1934) 1 Cal.2d 759, 761–762 [37 P.2d 460].)

We need not consider whether the Attorney General, under the common law power, has the right to pursue this action as one deemed "necessary for the enforcement of the laws of the state, the preservation of order, and the protection of public rights and interests." Certainly, an argument can be made that, when a municipality is under the control of individuals who would pay themselves excessive salaries and grant themselves exceptional benefits, without any apparent regard for the city's inability to meet these financial obligations, the "preservation of order" and "protection of public . . . interests" permit, if they do not affirmatively require, action by the Attorney General.

In this case, however, the Attorney General argues that this action was brought on behalf of the City. Indeed, although the Attorney General purported to bring the action on behalf of the "People of the State of California," the allegations of the complaint sought relief on behalf of the City. When the Attorney General alleged a breach of fiduciary duty, the fiduciary duty at issue was allegedly owed "to the City and its citizens," not the state. The complaint sought an order requiring defendants to make restitution to the City, not the state. It is apparent, then, that despite the caption of the action, the Attorney General brought the action on behalf of the City. When an action is brought in the name of the wrong party, leave to amend should be granted to substitute the real party in interest. (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1004–1005 [79 Cal.Rptr.2d 544].) As the Attorney General clearly brought this action on behalf of the City, an amendment to change the name of the plaintiff should be permitted.[16]

Defendants suggest that the action could not have been brought on behalf of the City because the Attorney General named the City as a defendant. In this regard, we believe Code of Civil Procedure section 382 governs. That section provides, "If the consent of any one who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason thereof being stated in the complaint . . . ." (*Ibid.*) Here, the complaint was originally filed on September 15, 2010, when the City was still under the control of

---

[16] The action is properly brought in the name of the City, not the people of the City. (Cf. *Smith v. Myers* (1860) 15 Cal. 33, 34 ["The people of the county are not a corporation, nor are they recognized in law as capable of suing or being sued. If any objection is taken, or can be taken, to [a county contract], it must be by the county, which is a corporation . . . ."].)

defendants.[17] The initial complaint alleged, "[u]pon information and belief, the City continues to pay defendants their excessive and wasteful salaries." The complaint sought a declaration that "all defendants have vacated their public offices," and an order appointing a receiver to "facilitate the operation of the City." These allegations are sufficient to meet the requirements of Code of Civil Procedure section 382; the City was named as a defendant because it was still under the control of defendants and was therefore unable to be joined as a plaintiff.[18]

■ Although we discuss the cause of action for government waste later in this opinion, it is useful to address the cause of action with respect to standing at this point. Code of Civil Procedure section 526a provides that a taxpayer can bring an action against a government officer to enjoin a threatened act of government waste. Code of Civil Procedure section 526a *provides standing* to taxpayers; it does not *limit standing* to bring actions for waste to taxpayers. Indeed, the statute expressly states, "[t]his section does not affect any right of action in favor of a county, city, town, or city and county, or any public officer . . . ." (*Ibid.*) Thus, the Attorney General, on behalf of the City, may pursue an action for government waste, even if the City does not meet the standing requirements for a taxpayer action under Code of Civil Procedure section 526a.[19]

### 3. *The Tort Claims Act Does Not Apply*

Defendants argue that, as this action seeks relief against public employees, the Attorney General was required to file a claim pursuant to the Tort Claims Act in order to pursue the action. We disagree.

■ The Tort Claims Act provides that all claims for money or damages[20] against local entities shall first be presented to the governmental entity. (Gov.

---

[17] The City represents that the City Council was replaced on March 8, 2011. It states, "[t]he new council in Bell, on behalf of its citizens, . . . asks that this Court act to allow the [Attorney General] to proceed and seek justice for our community." Indeed, as counsel for the City stated at oral argument, "We need their help." Counsel represented that the City was hemorrhaging funds and could ill afford to pursue defendants alone.

[18] See *Osburn v. Stone* (1915) 170 Cal. 480, 483 [150 P. 367], which stated, "The general rule is that the municipality itself, upon the refusal of its officers to maintain the action, should be impleaded as a party defendant, but of course it is fundamental that where a demand would be unavailing, as is shown to be the case under the present complaint, a demand upon the municipal authorities so to commence proceedings is unnecessary."

[19] Our conclusion is not unique to the City, and would apply to any city in which it appeared that city officials were acting outside the scope of the law, and the city itself could not pursue the miscreants as they still controlled the city.

[20] Although this action seeks restitution of funds paid to defendants, it is not a claim "for specific recovery of property" which is exempt from the Tort Claims Act. (*City of Los Angeles v. Superior Court* (2008) 168 Cal.App.4th 422, 428 [85 Cal.Rptr.3d 560].) Only restitution claims

Code, § 905.) Similarly a claim against a public employee or former public employee for injuries resulting from acts or omissions in the course of his or her employment must be presented if a claim against the employing entity for the same injury must be presented. (Gov. Code, § 950.2.) This is so because a public entity is required to pay a judgment against its employee "for an injury arising out of an act or omission occurring within the scope of his or her employment as an employee of the public entity." (Gov. Code, § 825, subd. (a).) "The general proviso that a public entity may not be sued for money or damages until it has received, and had the chance to act upon, a written claim is intended to allow the entity to investigate while the facts are fresh, to settle short of litigation where appropriate, and to engage in fiscal planning for potential liability." (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1214 [48 Cal.Rptr.3d 108, 141 P.3d 225].)

None of this applies, however, when the plaintiff is the employing public entity itself. Here, as we have discussed, the Attorney General brought the instant action *on behalf of the City*. It would turn the Tort Claims Act on its head to even suggest that the City is required to file a claim *with itself* before bringing suit against its employees for acting *outside* the scope of their employment. As the action here was brought on behalf of the City, compliance with the Tort Claims Act was not required. (Cf. *Stanson v. Mott* (1976) 17 Cal.3d 206, 225 [130 Cal.Rptr. 697, 551 P.2d 1] [stating, "indemnification provisions of the [T]ort [C]laims [A]ct are not directly applicable to an action by or on behalf of a public entity to recover moneys . . . illegally expended by a public employee . . ."].)

4.  *Separation of Powers, Legislative Immunity, and Discretionary Act Immunity Do Not Bar Causes of Action Based on Ultra Vires Acts*

The heart of this matter, and the issue found dispositive by the trial court, is the issue of separation of powers. More specifically, the question raised by this case is: To what extent can the judiciary review compensation decisions taken by the city council (and chief administrative officer) of a charter city?

We begin with the doctrine of separation of powers, which is enshrined in our Constitution. "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." (Cal. Const., art. III, § 3.) Separation of powers means that "legislators have absolute immunity from damage suits based on legislative acts." (*Steiner v. Superior Court* (1996) 50 Cal.App.4th 1771, 1784 [58 Cal.Rptr.2d 668].) It applies to suits for declaratory and injunctive relief, as well as suits

in which the defendant had a duty to return seized property are exempt; claims for restitution of funds improperly paid are subject to the Tort Claims Act. (168 Cal.App.4th at pp. 425, 430.)

for damages. (*Ibid.*) Furthermore, this rule applies to municipal legislators, when acting in a legislative capacity. (*D'Amato v. Superior Court* (2008) 167 Cal.App.4th 861, 869 [84 Cal.Rptr.3d 497].) It also encompasses local administrators, when they act in direct assistance of legislative activity. (*Steiner v. Superior Court, supra,* 50 Cal.App.4th at p. 1784.) In short "legal action may not be taken against [municipal legislators] for their activities involving planning or enacting legislation." (*Id.* at p. 1785.)

This doctrine has been manifested in a statute providing for immunity for legislative acts. "A public employee is not liable for an injury caused by his adoption of or failure to adopt an enactment . . . . " (Gov. Code, § 821.) Similarly, statutes provide for immunity for acts taken within a public employee's discretion.[21] "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." (Gov. Code, § 820.2.) Taken together, these statutory immunities provide that there is no liability for discretionary choices made by legislators and executives, operating within the scope of their offices.

With the doctrines governing immunity thus established, we next turn to the issue of whether municipal salaries are within the discretion of municipal legislators. "[A]ll questions of policy and wisdom concerning matters of municipal affairs are for the determination of the legislative governing body of the municipality and not for the courts." (*Wheeler v. Gregg* (1949) 90 Cal.App.2d 348, 361 [203 P.2d 37].) It cannot be disputed that setting officer and employee compensation is an exclusively municipal matter, over which the legislative body of a charter city has exclusive control. (Cal. Const., art. XI, § 5, subd. (b)(4); *Sonoma County Organization of Public Employees v. County of Sonoma* (1979) 23 Cal.3d 296, 317 [152 Cal.Rptr. 903, 591 P.2d 1].)

This does not, however, mean that such decisions are completely immune from judicial review. Courts have the power to "determine whether or not the municipal bodies acted within the limits of their power and discretion." (*Wheeler v. Gregg, supra,* 90 Cal.App.2d at p. 361.) When the issue is one of municipal officer or employee compensation, courts have not hesitated to consider whether the compensation paid was within the scope of the city council's authority as granted by the city's charter. (See *City and County of S. F. v. Boyd* (1943) 22 Cal.2d 685, 688, 690 [140 P.2d 666] (*Boyd*)

---

[21] Discretionary act immunity is not, strictly speaking, an application of the separation of powers doctrine. However, as we are here concerned with potential judicial review of discretionary acts of a legislative body (the city council) and an executive officer (the chief administrative officer), it is, in this case, akin to separation of powers.

[charter allowed board of supervisors to set salaries in accordance with generally prevailing rates]; *Stohl v. Horstmann* (1944) 64 Cal.App.2d 316, 323 [148 P.2d 697] [charter allowed city council to fix salaries but not to create a new rank or salary grade].) If the compensation set by an ordinance is outside the authority of the legislative body, the ordinance is to be struck down.

The rule was established in *Boyd, supra,* 22 Cal.2d 685, that when the charter imposes limitations on the salaries which can be set by the municipality's legislative body (in that case, the salaries were required to be in accordance with generally prevailing rates), the legislative body has discretion to determine whether proposed rates meet the limitation. "The courts will not interfere with that determination unless the action is fraudulent or so palpably unreasonable and arbitrary as to indicate an abuse of discretion as a matter of law."[22] (*Boyd,* at p. 690; see *Carrier v. Robbins* (1952) 112 Cal.App.2d 32, 35 [245 P.2d 676].) Thus, the fact that a city's legislative body has enacted an ordinance setting forth an officer's or employee's salary is the beginning of the analysis, not the end of it. The courts can and will strike down the ordinance if it violates the limitations set forth in the city's charter. (See *Walker v. County of Los Angeles* (1961) 55 Cal.2d 626, 639 [12 Cal.Rptr. 671, 361 P.2d 247] [charter required salaries to be in accord with prevailing wages; salaries adopted did not consider prevailing wages].) Indeed, the Council member defendants concede on appeal that the court can strike down legislation conflicting with a superseding legal mandate.

■ Our discussion above relates to salaries set by ordinance. The instant case involves salaries set by both ordinance and employment contracts. Just as courts will strike down an ordinance which violates the city's charter, courts will declare void a contract which was made without authority. "Any act that is violative of or not in compliance with the charter is void." (*Domar Electric, Inc. v. City of Los Angeles* (1994) 9 Cal.4th 161, 171 [36 Cal.Rptr.2d 521, 885 P.2d 934].) In numerous cases, courts have voided contracts purportedly made with cities when the city officials who executed the contracts were not authorized to do so. (E.g., *Katsura v. City of San Buenaventura* (2007) 155 Cal.App.4th 104, 109 [65 Cal.Rptr.3d 762] [striking down an oral contract for additional work when the charter had no provision authorizing oral contracts]; *G. L. Mezzetta, Inc. v. City of American Canyon* (2000) 78 Cal.App.4th 1087, 1089 [93 Cal.Rptr.2d 292] [voiding an oral contract when relevant statutes prohibited city from entering into oral

---

[22] Interestingly, the dissent in *Boyd* argued that a stricter rule should apply when the charter sets out a *specific limitation* on the legislature's discretion (such as parity with generally prevailing rates), and that the standard of striking down the legislative body's decision only if it is fraudulent or so palpably unreasonable and arbitrary as to indicate an abuse of discretion as a matter of law "would be applicable if the only duty of the commission and the board of supervisors were to fix a 'reasonable' salary." (*Boyd, supra,* 22 Cal.2d at p. 700 (dis. opn. of Edmonds, J.).)

contracts]; *Foxen v. City of Santa Barbara* (1913) 166 Cal. 77, 81–82 [134 P. 1142] [plaintiff denied recovery for injuries suffered when working on a city project because city had been required to let the contract out to the highest bidder, not employ workers directly; result would have been the same had plaintiff sued for wages].)

■ The issue next arises as to the damages, if any, a city may recover, and from whom, when its officers made an illegal or unauthorized contract. First and foremost, as the contract is void, the city is entitled to restitution from the party who had purportedly contracted with the city.[23] This is true even if the individual believed the city officer with whom he was contracting had the authority to bind the city. "Persons dealing with a public agency are presumed to know the law with respect to any agency's authority to contract. [Citation.] ' "One who deals with the public officer stands presumptively charged with a full knowledge of that officer's powers, and is bound at his . . . peril to ascertain the extent of his . . . powers to bind the government for which he . . . is an officer, and any act of an officer to be valid must find express authority in the law or be necessarily incidental to a power expressly granted." ' [Citation.]" (*Katsura v. City of San Buenaventura, supra,* 155 Cal.App.4th at p. 109.) Indeed, as a general rule, a party who mistakenly believed it was validly contracting with a city cannot even recover on a quasi-contract theory. " '[N]o implied liability to pay upon a *quantum meruit* could exist where the prohibition of the statute against contracting in any other manner than as prescribed is disregarded.' [Citation.] The reason is simple: ' "The law never implies an agreement against its own restrictions and prohibitions, or [expressed differently], 'the law never implies an obligation to do that which it forbids the party to agree to do.' " ' [Citation.] In other words, contracts that disregard applicable code provisions are beyond the power of the city to make. [Citation.]"[24] (155 Cal.App.4th at p. 110.)

■ Second, we consider whether a city is entitled to restitution from its officer who, acting outside the scope of his or her authority, purported to authorize an unauthorized expenditure of public funds. The question was

---

[23] At oral argument, counsel for Adams suggested that, if a city improperly awards a contract and the contract is subsequently fully performed, the city is not entitled to seek restitution. In this regard, we note *Advance Medical Diagnostic Laboratories v. County of Los Angeles* (1976) 58 Cal.App.3d 263 [129 Cal.Rptr. 723]. In that case, a county's contract with a medical test provider was executed by the county's purchasing agent, rather than the board of supervisors, as was required. Although the contract had been fully performed, the fact that it was unauthorized rendered it void. (*Id.* at pp. 272–273.) The court ultimately held that under the circumstances, equitable estoppel *might* bar the county from obtaining restitution, but such a result was by no means guaranteed. (*Id.* at pp. 273–274.)

[24] However, under certain circumstances, if the entity *could* approve the contract, public policy would not be frustrated, and equitable considerations justify it, the entity may be equitably estopped to deny the validity of the contract. (*Advance Medical Diagnostic Laboratories v. County of Los Angeles, supra,* 58 Cal.App.3d at pp. 273–274.)

answered by our Supreme Court in *Stanson v. Mott, supra,* 17 Cal.3d 206. In that case, the Director of the California Department of Parks and Recreation spent $5,000 of public funds to advocate for passage of a parks-related bond issue. The Supreme Court concluded that the expenditure was unauthorized, and turned to the issue of the director's personal liability to the state for the unauthorized expenditure. Finding no statutory provision expressly governing the liability of public officials for this type of improper expenditure, the court created a rule: if the official does not use due care or reasonable diligence in authorizing the expenditure of public funds, the official may be subject to personal liability for the improper expenditure. (*Id.* at pp. 226–227.) It must be remembered that this is a standard for determining when a public official is liable for restitution for an ultra vires act. It does not mean that every public expenditure which was not made with due care or reasonable diligence is a violation of duty; it simply means that *when* an expenditure of public funds is wholly unauthorized, the public official who authorized the expenditure can be liable for restitution if he or she acted unreasonably. (*Harvey v. County of Butte* (1988) 203 Cal.App.3d 714, 719 [250 Cal.Rptr. 65].)

In sum, the doctrines of separation of powers, legislative immunity, and discretionary act immunity prevent courts from considering the wisdom of legislative and executive decisions, including those pertaining to compensation, which have been entrusted to the discretion of municipal authorities. There can be no liability for such a decision when made within the discretion of such officials. However, if the decision made was *outside* the authority of the officials—either as an ordinance outside of the city council's authority under the charter, or a contract made by someone without the authority to bind the city to it—courts can strike down the ordinance or contract as void. If that occurs, the recipient of funds under the void ordinance or contract may be liable to the city in restitution, and the city officials who purported to authorize the unauthorized expenditure may also be liable in restitution, if they failed to use due care or reasonable diligence in authorizing it.

It is apparent that, in this case, the Attorney General sought to impose liability on Rizzo and the Council member defendants for some acts which are clearly protected by legislative immunity. For example, the second cause of action seeks to hold the Council member defendants liable for their negligence in approving the employment contracts of Rizzo and Spaccia, and to hold Rizzo liable for his negligence in approving the employment contracts of Spaccia and Adams. As alleged, these acts are within the authority of defendants; there is no liability for their negligent approval of contracts. However, it also appears that the Attorney General has alleged, or reasonably could allege, acts outside the scope of defendants' authority. For example, the first amended complaint alleges that Rizzo, as chief administrative officer, was entitled by the City Charter to a salary " 'commensurate with the responsibilities of chief administrative officer of the City,' " and that the

Council member defendants provided him compensation far in excess of this limitation. Similarly, the City Charter limited the council members' salaries to "the amount which Council Members of general law cities of similar population would receive under State law." It was alleged that their compensation greatly exceeded this limitation. In both instances, the Attorney General alleged, or reasonably could allege, the salaries approved by the council members were so palpably unreasonable and arbitrary as to indicate an abuse of discretion as a matter of law, and were thus ultra vires acts which should be struck down.

### 5. The Legislative Act Privilege Bars Only the Cause of Action Based on the Misleading Ordinance

Civil Code section 47, subdivision (b)(1) declares as absolutely privileged any publication made in any legislative proceeding. The privilege is "broad and comprehensive, including proceedings of all legislative bodies, whether state or municipal." (*Scott v. McDonnell Douglas Corp.* (1974) 37 Cal.App.3d 277, 286, fn. 7 [112 Cal.Rptr. 609].) Malice will not defeat the privilege as long as "it is shown that the statement . . . bears some connection to the work of the legislative body." (*Id.* at p. 285.)

The third cause of action alleges fraud for the misleading ordinance. We can conceive of few statements which come so completely within the scope of the legislative privilege more than the title and text of actual legislation. The Attorney General cannot pursue a cause of action based on the misleading ordinance.

We reach a different conclusion, however, with respect to the misleading memorandum. It was alleged that Rizzo provided a false memorandum to the city clerk with directions to provide it to anyone who inquired as to the salaries of Rizzo and the council members. Creation and dissemination of a memorandum stating officials' salaries is not a legislative act, nor does it bear any connection to the work of the legislative body.[25]

### 6. The Causes of Action Alleged and Other Causes of Action Which Could Be Alleged

Having discussed, in general terms, the challenges brought by defendants to the Attorney General's complaint, we now turn to the specific causes of

---

[25] We similarly reject any contention that the cause of action for fraud based on the misleading memorandum is barred by the privilege for a statement made "[i]n the proper discharge of an official duty" (Civ. Code, § 47, subd. (a)) or the privilege for a statement made "in any . . . official proceeding authorized by law" (Civ. Code, § 47, subd. (b)). There is nothing on the face of the operative complaint indicating that drafting the memorandum about salaries and directing its distribution were part of Rizzo's official duties or performed as part of any official proceeding.

action alleged. In the course of our discussion, we will conclude that, although some of the causes of action were barred, leave to amend should have been granted to permit allegations of similar causes of action based on the same or similar facts.

### a. *Government Waste*

The first cause of action was for government waste. The Attorney General brought this cause of action under Code of Civil Procedure section 526a, the statute providing for taxpayer actions to enjoin, and obtain restitution to the government for (*Osburn v. Stone, supra*, 170 Cal. at p. 482), government waste. As we have discussed, the City, on whose behalf the action was brought, does not have standing as a taxpayer under Code of Civil Procedure section 526a. However, Code of Civil Procedure section 526a does not prevent the City from itself suing to enjoin, and obtain restitution for, government waste. Thus, although the Attorney General should not have brought this cause of action under Code of Civil Procedure section 526a, a cause of action for government waste could nonetheless be alleged.

Specifically, we believe the appropriate cause of action is one to declare void ultra vires ordinances and contracts and to obtain restitution from the appropriate parties. Considering the allegations of the complaint, the language of the City Charter and contracts in the record,[26] as well as facts which the Attorney General and City have subsequently indicated they could allege, it appears that the Attorney General, on behalf of the City, can meet this standard. We briefly consider the employment contracts at issue.

The council members' salaries were limited by the City Charter to "the amount which Council Members of general law cities of similar population would receive under State law." The council members' compensation, however, was alleged to be so dramatically out of line with the amount which council members of general law cities of similar population would receive under state law, it could reasonably be argued that the compensation was "fraudulent or so palpably unreasonable and arbitrary as to indicate an abuse of discretion as a matter of law." If so, the ordinances setting such compensation were ultra vires, and may be declared void as a matter of law, entitling the City to restitution from the council members who received the improper salaries.

Similarly, Rizzo's compensation was limited, in the City Charter, to a salary "commensurate with the responsibilities of chief administrative officer

---

[26] On appeal, Adams requests that we take judicial notice of his employment contract and the addendum thereto. We do so.

of the City." It was alleged, however, that Rizzo's compensation was dramatically out of line with the compensation of chief administrative officers of cities of comparable size. As such, it could be alleged that the contracts setting Rizzo's compensation were void as a matter of law, entitling the City to restitution from Rizzo, and from the council member defendants, if they failed to use due care in authorizing the unauthorized expenditures. Moreover, it was alleged that some of Rizzo's contracts were not properly authorized by the right officials, as required by the City Charter. If so, this would constitute an alternative basis for voiding the contracts, and recovering restitution from Rizzo and the council members who, without due care, purported to authorize the contracts.

As to Adams, his employment contract was executed by Rizzo on behalf of the City.[27] The City Charter, however, provides that the City will not be bound by a contract unless made in writing, approved by the city council, and signed by the mayor. (City Charter, § 519.) The charter also provides that, by ordinance or resolution, the city council may authorize the chief administrative officer to bind the City "with or without a written contract, for the acquisition of equipment, materials, supplies, labor, services or other items included within the budget approved by the city council." (*Ibid.*) There is, however, no indication that the city council gave such authorization to Rizzo to enter into the employment contract with Adams on behalf of the City. To the contrary, the Attorney General alleged that Rizzo approved Adams's contract without consultation with, or obtaining the approval of, the city council. Should the Attorney General be able to more explicitly allege that Rizzo was unauthorized to execute Adams's contract on behalf of the City, the Attorney General can seek to void that contract, and obtain restitution from both Adams[28] and Rizzo, if he authorized the contract without due care.

---

[27] The first page of the contract twice states that the City "is a general law city." This is incorrect; the City had adopted its charter in 2005, more than three years prior to the execution of this contract. Whether this obvious error should have put Adams on notice that the contract might not have been properly authorized is not before us.

[28] Adams states, in his brief on appeal, that "there is nothing alleged in the [operative complaint] to indicate that Adams knew, or had reason to believe, that there was any impropriety surrounding his hiring." The issue is beside the point; if the Adams contract is void as unauthorized, Adams is liable for restitution even if he did not know the contract was unauthorized. Moreover, we are not here concerned with the allegations of the operative complaint, but the allegations the Attorney General could amend to allege. In this regard, we note that, in a writ proceeding before this court arising from a criminal proceeding against Spaccia, Spaccia included, as an exhibit to her petition, an e-mail exchange she had with Adams during the contract negotiations, in which Adams, on the advice of counsel, asked Spaccia for a copy of the document by which the city council had authorized Rizzo to enter into the contract on the City's behalf. Spaccia responded, in part, " 'We have painstakingly and carefully, and with attorney assistance made sure of what authority [Rizzo] has vs. what the City Council has. So, for your attorney's information [Rizzo] has the proper authority to enter

The record is not entirely clear as to whether the Attorney General can allege that Spaccia was the recipient, or the maker, of an unauthorized contract. However, if such allegations can reasonably and honestly be made, the Attorney General should be granted leave to amend to state such a cause of action against Spaccia, as well.

### b. *Negligence*

The negligence cause of action seeks to recover against Rizzo and the Council member defendants for negligently authorizing the wasteful expenditures of public funds. As it stands, the cause of action is barred by legislative immunity. As discussed above, the Attorney General may seek restitution against Rizzo and the Council member defendants only for authorizing, without due care, the *unauthorized* expenditures of public funds.

### c. *Fraud by the Misleading Ordinance*

As discussed above, the cause of action for fraud arising from the allegedly misleading ordinance is wholly barred by the legislative privilege. The demurrer was properly sustained without leave to amend this cause of action.

### d. *Fraud by the Misleading Memorandum*

The cause of action against Rizzo for fraud arising from the misleading memorandum is not, on its face, barred by any privilege. However, the cause of action is not properly alleged. " 'The well-established common law elements of fraud which give rise to the tort action for deceit are: (1) misrepresentation of a material fact (consisting of false representation, concealment or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to deceive and induce reliance; (4) justifiable reliance on the misrepresentation; and (5) resulting damage. [Citations.] . . . It is essential . . . that the person complaining of fraud actually have relied on the alleged fraud, and suffered damages as a result. [Citations.]' [Citation.] 'Fraud is required to be pleaded with specificity.' [Citation.]" (*Bower v. AT&T Mobility, LLC* (2011) 196 Cal.App.4th 1545, 1557 [127 Cal.Rptr.3d 569].)

Our concern is with the fourth and fifth elements, justifiable reliance causing damages. As to reliance, the Attorney General, on behalf of the City, only alleged on information and belief that "the memorandum was provided to members of the public," and that they "relied on the misrepresentations in the memorandum, and thus they were deprived of the motive and opportunity to challenge the excessive and wasteful salaries." The damages to the City are

into a Contract with you, and we are not interested in educating him on how we did that.' " (*Spaccia v. Superior Court* (2012) 209 Cal.App.4th 93, 97, fn. 5 [146 Cal.Rptr.3d 742].)

alleged to be nothing more than the excessive salaries themselves. These allegations are not sufficiently specific. They do not identify with any specificity (1) the individuals to whom the memorandum was provided; (2) when the memorandum was provided to them; (3) the acts the individuals took, or failed to take, in reliance on the memorandum; and (4) how the *City* was damaged by *the individuals'* reliance on the misleading memorandum.

On appeal, however, the Attorney General represented that, if given an opportunity to amend, the Attorney General could identify a specific individual to whom the memorandum was given, the circumstances of the provision of the memorandum, the recipient's reliance, and subsequent damages to the City. As such, on remand, the Attorney General should be permitted an opportunity to amend this cause of action.

### e. *Government Code Section 1090*

Government Code section 1090 provides, in pertinent part: "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members." " 'The evil to be thwarted by section 1090 is easily identified: If a public official is pulled in one direction by his financial interest and in another direction by his official duties, his judgment cannot and should not be trusted, even if he attempts impartiality.' [Citation.] Where public and private interests diverge, the full and fair representation of the public interest is jeopardized." (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1073 [103 Cal.Rptr.3d 767, 222 P.3d 214] (*Lexin*).) There are various exceptions, both statutory and common law, to this rule. For example, an officer or employee is not deemed to be interested in a contract if his or her interest is only "[t]hat of an officer in being reimbursed for his or her actual and necessary expenses incurred in the performance of official duties." (Gov. Code, § 1091.5, subd. (a)(2).) Similarly, officials are sometimes permitted to negotiate contracts affecting their own salaries under a "rule of necessity." (*Lexin, supra*, 47 Cal.4th at p. 1085.)

The allegations in this case are that Rizzo and Spaccia modified the City's supplemental retirement plan to provide themselves with unique benefits not provided any other members of the plan. The trial court sustained the demurrer with leave to amend this cause of action, on the basis that the contract itself was not sufficiently identified. Rizzo and Spaccia argue that the trial court should have sustained the demurrer without leave to amend, on the basis that a statutory exception applies. Government Code section 1091.5, subdivision (a)(9) provides that an officer or employee is not deemed to be interested in a contract if his or her interest is only "[t]hat of a person

receiving salary, per diem, or reimbursement for expenses from a government entity, unless the contract directly involves the department of the government entity that employs the officer or employee, provided that the interest is disclosed to the body or board at the time of consideration of the contract, and provided further that the interest is noted in its official record."

While this statute is "no model of clarity" (*Lexin, supra,* 47 Cal.4th at p. 1080), our Supreme Court has expressly held that it "was never intended to permit government officials to negotiate prospective changes in their own government compensation." (*Id.* at p. 1085.) At issue in *Lexin* were agreements by which the board administering a city's retirement system agreed to allow the city to limit its funding of the retirement system in exchange for the city's agreement to provide increased pension benefits to city employees, including the board member defendants.[29] (47 Cal.4th at p. 1062.) The court concluded that the exception of Government Code section 1091.5, subdivision (a)(9) "was intended to apply to situations where the body or board of which an official is a member is contemplating a contract with—or on behalf of—a government entity for which the official also works." (*Lexin, supra,* 47 Cal.4th at p. 1079.) That is to say, if "a contract an official considers in his or her official capacity is with the official's government employer and involves direct financial gain, the official is prohibited from participating under section 1090. . . . [I]f the contract involves no direct financial gain, does not directly affect the official's employing department, as is only with the general government entity for which the official works, the interest is a minimal or noninterest under section 1091.5(a)(9) and no conflict of interest prohibition applies." (*Id.* at p. 1081.) The Supreme Court rejected the defendants' argument that Government Code section 1091.5, subdivision (a)(9) "insulates any interest, so long as it is an interest in government salary," as "considerably too broad. It would permit board members to freely select and hire themselves out for any number of new government positions, or to act in their official capacities to modify their own individual salaries without resort to the rule of necessity. This is not now, nor has it ever been, the law." (*Lexin, supra,* 47 Cal.4th at p. 1084, fn. 15.) Indeed, the court rejected the assertion that this subdivision permitted the

---

[29] The court ultimately found dispositive another exception to Government Code section 1090, which provides that an officer shall not be deemed to be interested in a contract if his or her interest is that of "a recipient of public services generally provided by the public body or board of which he or she is a member, on the same terms and conditions as if he or she were not a member of the body or board." (Gov. Code, § 1091.5, subd. (a)(3).) Thus, the board members whose pensions increased on the same terms and conditions as all other city employees did not violate Government Code section 1090, but the board member who, under the agreement, received a unique pension benefit may well have. (*Lexin, supra,* 47 Cal.4th at p. 1063.) It appears that the Attorney General alleged that Rizzo and Spaccia modified the supplemental retirement plan to provide themselves unique benefits in order to fall within the scope of *Lexin.*

defendants to negotiate changes to their own pension plans. "[D]irect changes to personal compensation . . . do not come within the exception for existing interests in government salary in the first instance." (*Id.* at p. 1085.) As such, Rizzo and Spaccia's reliance on the Government Code section 1091.5, subdivision (a)(9) exception is misplaced; that subdivision does not permit them to change the City's supplemental retirement plan to benefit themselves. The trial court did not err in granting leave to amend this cause of action.

### f.   *Breach of Fiduciary Duty*

The final cause of action alleged was for breach of fiduciary duty. "The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." (*Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1086 [41 Cal.Rptr.2d 768].) " ' "A fiduciary relationship has been defined as 'any relation existing between parties to a transaction wherein one of the parties is . . . duty bound to act with the utmost good faith for the benefit of the other party. Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent.' . . ." ' " (*Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Associates, Inc.* (2004) 115 Cal.App.4th 1145, 1156–1157 [10 Cal.Rptr.3d 582].)

Spaccia argues that, as a mere employee, she owed no fiduciary duty to the City. The argument is without merit. While Spaccia may have been a mere employee when she was first hired as assistant to the chief administrative officer, she ultimately became assistant chief administrative officer herself. Surely, a city reposes trust and confidence in its assistant chief administrative officer. (See *County of San Bernardino v. Walsh* (2007) 158 Cal.App.4th 533, 543 [69 Cal.Rptr.3d 848] [the chief administrative officer was a "government official[] with a fiduciary duty to the County"].)

However, Adams's argument that he owed the City no fiduciary duty in the negotiation of his contract is well taken. Adams was not a City employee when he negotiated his contract; any fiduciary duty he owed the City as its chief of police came into existence only after his employment contract was executed. The Attorney General offers no argument for her assertion that Adams owed the City a fiduciary duty. We therefore conclude that Adams's demurrer was appropriately sustained without leave to amend this cause of action.

Neither Rizzo nor the Council member defendants suggest that they did not owe the City a fiduciary duty. They simply argue that this cause of action is derivative of the other causes of action and barred for the same reasons. Yet, as we have discussed, the Attorney General, on behalf of the City, can allege causes of action against each of these defendants for restitution arising from unauthorized acts. As such, it can similarly allege a cause of action for breach of fiduciary duty against them.[30]

### g. Summary of Conclusions

In sum, we conclude that the demurrer should not have been sustained without leave to amend as to all causes of action except the fifth cause of action, for violation of Government Code section 1090. Instead, leave to amend should have been granted to permit the Attorney General to (1) pursue this action on behalf of the City;[31] (2) allege causes of action for restitution of unauthorized funds *received* by Rizzo, the Council member defendants, Adams, and, if the facts support such a cause of action, Spaccia; (3) allege causes of action for restitution of unauthorized funds *expended* by Rizzo and the Council member defendants; (4) pursue the City's cause of action against Rizzo for the misleading memorandum; (5) pursue the City's cause of action for violation of Government Code section 1090 against Rizzo and Spaccia; and (6) pursue the City's cause of action for breach of fiduciary duty against Rizzo, Spaccia, and the Council member defendants. Leave to amend the complaint was properly denied with respect to (1) the second cause of action, for negligence; (2) the third cause of action, for fraud; and (3) the sixth cause of action, for breach of fiduciary duty, with respect to defendant Adams only.

### 7. The Trial Court Did Not Abuse Its Discretion in Denying the Stay Motion

The Attorney General argues that the trial court erred in denying the motion of the Attorney General and the district attorney to stay this action pending resolution of the criminal actions against defendants. "We review the trial court's denial of plaintiffs' motion for a stay under the abuse of discretion standard of review." (*Bains v. Moores* (2009) 172 Cal.App.4th 445,

---

[30] "Disgorgement of profits is particularly applicable in cases dealing with breach of a fiduciary duty, and is a logical extension of the principle that public officials and other fiduciaries cannot profit by a breach of their duty." (*County of San Bernardino v. Walsh, supra,* 158 Cal.App.4th at p. 543.)

[31] As the City is already pursuing a cross-complaint against Rizzo, we leave it to the trial court, on remand, to decide whether and how to consolidate the City's action against Rizzo with the Attorney General's action against Rizzo on behalf of the City. At oral argument, counsel for Adams represented that the City is pursuing Adams in a civil action as well. The trial court should consider any consolidation issues with respect to the City's action against Adams if and when they arise.

480 [91 Cal.Rptr.3d 309].) The determination whether to stay an action pending resolution of criminal proceedings should be made in light of the particular circumstances and competing interests involved. (*Id.* at p. 483.) The decision maker should consider the extent to which Fifth Amendment rights are implicated. In addition, factors to be considered include (1) the interest of the party opposing the stay in proceeding expeditiously with the action, and the potential prejudice to the party opposing the stay of a delay; (2) the burden which any particular aspect of the proceedings may impose on the party seeking the stay; (3) the convenience to the court in management of its cases and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending cases. (*Bains*, at p. 483.) While the privilege against self-incrimination is a factor to be considered, the issue of a stay itself does not implicate constitutional issues. (*Avant! Corp. v. Superior Court* (2000) 79 Cal.App.4th 876, 882 [94 Cal.Rptr.2d 505].)

In this case, the trial court did not abuse its discretion in denying the stay. The Attorney General brought the action knowing that several defendants had already asserted their Fifth Amendment rights, but nonetheless chose to file the action. Although there were concerns that the criminal defendants might seek to obtain information unavailable through criminal discovery by means of civil discovery (and similar concerns of overburdening City officials with too many discovery requests) none of these issues had yet manifested and the trial court could resolve them with appropriate orders if and when they arose. Additionally, one defendant, Adams, was not named in the criminal actions, and he had an interest in seeing the instant civil case through to completion as early as possible; as all causes of action against Adams implicate defendant Rizzo, severance would be impractical. In short, the trial court balanced the relevant factors and concluded a stay was unnecessary.

While we affirm the trial court's denial of a stay, our conclusion is without prejudice to revisiting the issue on remand in light of intervening events. Specifically, it appears that the trial court *did* stay all causes of action pending between Rizzo and the City, except Rizzo's cause of action for the City to provide him a defense in the criminal action, pending resolution of the criminal actions against him. If this is so, it would appear improper to require the Attorney General's action on behalf of the City to proceed, while the City's own action against Rizzo is stayed.

### DISPOSITION

The judgment of dismissal is reversed. The matter is remanded to the trial court with directions to (1) vacate its order sustaining the demurrer without leave to amend the first, second, third, fourth and the sixth causes of action,

(2) enter a new and different order consistent with the views expressed in this opinion, and (3) conduct such further proceedings as may be appropriate. The parties shall each bear their own costs on appeal.

Klein, P. J., and Aldrich, J., concurred.