Filed 7/18/13  Hernandez v. Levatino CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DAVID S. HERNANDEZ,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>CHARLES R. LEVATINO,<br><br>    Defendant and Respondent. | F064938<br><br>(Super. Ct. No. 670673)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Stanislaus County.  Timothy W. Salter, Judge.

David S. Hernandez, in pro. per., for Plaintiff and Appellant.

McCormick, Barstow, Sheppard, Wayte & Carruth LLP, Marshall C. Whitney and Scott M. Reddie for Defendant and Respondent.

-ooOoo-

David S. Hernandez's (hereafter Hernandez) divorce from Sherri L. Hernandez (hereafter Wife) was final in 2004. Since that time Hernandez has filed numerous actions challenging the distribution of the marital assets.

In this action, Hernandez sued Charles R. Levatino, who represented Wife in the divorce. Hernandez's complaint and opening brief are very difficult to understand. It appears Hernandez alleges the trial court appointed Levatino a trustee for Hernandez and, as a result, Levatino owed Hernandez a fiduciary duty. Levatino allegedly breached this fiduciary duty when the marital assets were sold and/or divided.

Levatino filed a special motion to strike the complaint pursuant to Code of Civil Procedure section 425.16, subdivision (b)(1),[1] alleging that Hernandez's complaint was a strategic lawsuit against public participation (hereafter SLAPP). The trial court concluded that the causes of action in Hernandez's complaint arose from statements and actions occurring in a judicial proceeding (*id.,* subd. (e)(1)), and there was no possibility Hernandez would prevail on the merits of the claim (*id.,* subd. (b)(1)). Accordingly, it granted Levatino's motion, struck Hernandez's complaint, entered judgment in favor of Levatino, and awarded Levatino attorney fees.

We have thoroughly reviewed the record and conclude the trial court reached the correct conclusion. All of the actions complained of by Hernandez arose out of Levatino's representation of Wife, and there is no possible merit to the claims asserted by Hernandez. Thus, we affirm the judgment.

---

[1]All further statutory references are to the Code of Civil Procedure unless otherwise stated.

2.

**FACTUAL AND PROCEDURAL SUMMARY**

On November 16, 2011, Hernandez filed a complaint titled "Complaint Breach of Fiduciary Responsibily [*sic*] in Tort." As we understand the complaint, it alleged Levatino, the only defendant, was entrusted by the trial court with dividing the proceeds from the sale of community assets, thereby creating an attorney-client relationship between Hernandez and Levatino. The complaint described the relationship as "confidential" and asserted Levatino became Hernandez's fiduciary. According to the complaint, Levatino breached his fiduciary obligations when he made misrepresentations, failed to account for assets, failed to provide all sale documents related to community assets, and failed to provide an accounting for the sale of the community assets. Hernandez alleged he was unaware of Levatino's "dishonest motive" until November 10, 2010. Hernandez claimed he justifiably relied on Levatino because it was in the best interest of Levatino's client (Wife) to maximize the sale of the community assets.

The complaint also asserted Levatino falsely represented to the trial court on April 23, 2008, that a 2000 Ford Windstar van was sold during the marriage and Hernandez received a credit of $3,800 as his half of the sale proceeds. The complaint alleged the vehicle was not sold *during the marriage*. As a result of this misrepresentation, the complaint alleged Hernandez was deprived of his portion of the asset and caused him to lose motions he filed in 2008 and 2011 to correct this issue.

In addition, the complaint alleged Hernandez was damaged in an amount in excess of $300,000 when the community residence and another vehicle were sold. He claimed the residence was sold as a three-bedroom home when it was a five-bedroom home.

In September 2009, Hernandez filed a claim with Stanislaus County (hereafter County), apparently seeking recovery for Levatino's alleged misconduct. We presume Hernandez asserted Levatino was acting as an employee of the court at the time he acted, but Hernandez's reasoning is unclear. Another document filed with the trial court

3.

asserted that in December 2010 Hernandez learned that the van had not been sold and alleged Levatino made misrepresentations to the trial court about the van.

Levatino challenged the complaint in several respects. As pertinent, he filed a motion pursuant to section 425.16, asserting the trial court should strike the complaint because the actions alleged by Hernandez were privileged since Levatino was acting at all relevant times as Wife's attorney. Included in the motion was a declaration filed by Levatino that explained he was hired by Wife in 2003 to represent her in the proceedings to dissolve her marriage to Hernandez. Levatino never represented Hernandez "in any way" or "at any time." Hernandez and Wife stipulated to the sale of the family residence in 2003. A lien for unpaid child support was paid to County from the sale proceeds, and Hernandez received credit for that lien in the final settlement.

Levatino again represented Wife in 2008 when Hernandez filed a "Motion for Failure in the Division of Marital Assets" and a "Motion for Deliberate Misappropriation." On April 24, 2008, the trial court denied Hernandez's motions, concluding the marital assets had been divided pursuant to the stipulation. Hernandez then filed a claim with County alleging Levatino had misappropriated marital assets.

Hernandez next filed a "Petition to Enforce Marital Property in the Hernandez Dissolution." This motion asked the trial court to reconsider its April 24, 2008, order. The trial court denied this motion on July 13, 2010. This court denied Hernandez's appeal from that order. (*Hernandez v. Hernandez* (June 16, 2011, F060828) [nonpub. opn.].)

On August 9, 2011, Hernandez filed a "Motion Regarding Misrepresentation and Fraud." This motion was denied on September 13, 2011.

During this entire time, Levatino asserted he represented Wife only, and all representations he made to the trial court were accurate statements of the facts known to him and were made in the course of representing Wife.

4.

Hernandez opposed the motion to strike. We interpret his opposition as asserting Levatino was a court-appointed trustee over Hernandez and Wife's community assets, and therefore Levatino owed a fiduciary duty to Hernandez. Levatino breached this fiduciary duty, according to Hernandez, by (1) concealing assets from Hernandez, (2) failing to divide the community assets properly, (3) failing to provide an accounting, and (4) failing to disclose the location of hidden assets. The sole basis for the claims revolved around the sale of the van and the sale of the residence.

The trial court granted the motion to strike, concluding Levatino had met his burden of establishing he was entitled to the protection found in section 425.16, subdivision (b), and that Hernandez had failed to establish there was a probability he would prevail on the merits. This order was issued on March 8, 2012.

On March 22, 2012, Hernandez filed a motion for reconsideration of the order granting the motion to strike, which was denied. This appeal followed.

## DISCUSSION

The notice of appeal appears to indicate Hernandez is appealing from the judgment entered after the trial court granted Levatino's special motion to strike. He also appears to appeal from the order denying his motion requesting judicial notice.[2]

Since Hernandez's brief is very difficult to understand, we will do our best to determine the reasons Hernandez feels the trial court erred. We begin with section 425.16, the anti-SLAPP statute.

---

[2]The notice of appeal also states Hernandez is appealing from the order denying him a "Right to Attach." We have reviewed Hernandez's brief and find no reference to a "Right to Attach." Accordingly, if this were an issue, Hernandez has forfeited it because of his failure to provide any argument or cite any authority. (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) We also did not locate any documents in the record that would suggest an attachment was sought in this case.

5.

## I. Anti-SLAPP Motion

### *The statute*

Section 425.16, subdivision (b)(1) states that a cause of action that arises from any act by the defendant that is in furtherance of the defendant's "'right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue'" is subject to a special motion to strike unless the plaintiff can establish there is a "probability that the plaintiff will prevail on the claim."

The phrase "right of petition or free speech under the United States Constitution or the California Constitution [performed] in connection with a public issue" is defined in section 425.16, subdivision (e). As pertinent here, the definition of the phrase includes "any written or oral statement or writing made before a … judicial proceeding." (§ 425.16, subd. (e)(1).)

The anti-SLAPP statute is designed to deter and quickly dispose of frivolous litigation. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 311-312 (*Flatley*).) The statute allows the trial court to evaluate the lawsuit at an early stage in a manner similar to summary judgment. (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.) The granting of an anti-SLAPP motion results in dismissal of the claims on the merits and entitles the defendant to recover costs and attorney fees. (*Ibid*; § 425.16, subd. (c)(1).)

In ruling on a special motion to strike, the trial court follows a two-step analysis. (*Smith v. Adventist Health System/West* (2010) 190 Cal.App.4th 40, 50.) The moving defendant carries the initial burden to show the challenged cause of action arises from protected free speech or petitioning activity. (*Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1387.) The burden is satisfied by demonstrating that the conduct underlying the plaintiff's claim fits into a category of protected activity set forth

in section 425.16, subdivision (e).[3]  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).)

If the trial court finds the defendant's threshold showing has been made, the burden shifts to the plaintiff to produce evidence establishing a probability that he or she will prevail at trial on the cause of action.  (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)  To meet this burden, the plaintiff must plead and substantiate a legally cognizable claim for relief.  (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.)  "'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."' [Citation.]"  (*Ibid.*)  The evidence favorable to the plaintiff is accepted as true in this analysis, while the defendant's evidence is evaluated to determine if it defeats the plaintiff's claim as a matter of law.  (*Flatley*, *supra*, 39 Cal.4th at pp. 323, 326.)  The motion will not be granted unless both prongs of the statute are established.  (*Navellier*, *supra*, 29 Cal.4th at p. 89.)

We review an order granting or denying a special motion to strike de novo, engaging in the same two-step process as the trial court to determine if the parties have satisfied their respective burdens.  (*Flatley, supra,* 39 Cal.4th at p. 325; *Tuszynska v. Cunningham* (2011) 199 Cal.App.4th 257, 266-267.)

---

[3]The categories are:  "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  (§ 425.16, subd. (e).)

Thus, the trial court's ruling here was correct if (1) the causes of action in Hernandez's complaint were based on acts protected by section 425.16, and (2) Hernandez failed to establish there was a probability he would prevail on the merits of his causes of action.

*Analysis*

As far as we can discern from Hernandez's complaint and brief, his arguments all relate to statements Levatino made during judicial proceedings, i.e., the dissolution of marriage proceedings during which Levatino represented Wife. Hernandez does not suggest otherwise in his brief. Accordingly, we need not dwell on the first element in the analysis as it appears the trial court correctly concluded Levatino was entitled to the protection of section 425.16.

Instead, Hernandez apparently argues there is a probability he will prevail on the merits, i.e., the complaint is legally sufficient and there is a prima facie showing of facts sufficient to sustain a judgment in his favor. There are three overriding, and oft repeated, themes in Hernandez's attempts to establish an entitlement to relief.

**1. Sale of the family residence**

The first theme is Hernandez's allegation that the family residence was sold below its fair market value. According to Hernandez, this occurred because (1) the family residence was "marketed" as a three-bedroom home even though it was a five-bedroom home; (2) the extra two bedrooms existed because the garage was converted into two bedrooms; (3) the conversion was completed with permits properly obtained from the appropriate governing agency; and (4) someone mistakenly believed the conversion was not done with the proper permits.

As we have made clear in the preceding paragraph, these are allegations made by Hernandez, not facts that have been found true by any tribunal. We do not know if they are true or false, nor is it necessary for us to reach a conclusion to resolve this issue. We are merely repeating Hernandez's allegations. This clarification is necessary because

8.

Hernandez has demonstrated a habit of taking statements out of context and interpreting opinions, including the opinion from this court in the last appeal he filed, as standing for unreasonable and incorrect propositions.

Returning to Hernandez's argument, our observations are as follows. Hernandez has not presented any competent evidence that this discrepancy, if it existed, affected the market value of the home. His assertions simply are not competent evidence. Nor has Hernandez explained why this issue was not dealt with at the time the house was marketed.

Included in the record is a letter dated August 18, 2003, from Hernandez's attorney's office to the real estate agent who handled the transaction stating Hernandez was concerned because the home was being marketed as a three-bedroom home and also asserting the garage conversion was permitted properly. There is no evidence that either Hernandez or his attorney followed up on the issue. This record suggests the issue was discussed and resolved before the sale.

Finally, if the issue was not resolved, Hernandez has not, and cannot, provide any rational explanation why he did not do so before the house was sold. We emphasize the sale closed in October 2003. The sale proceeds were divided shortly thereafter, with various adjustments being made to each party's portion of the proceeds. If the sales price of the home was an issue, Hernandez could have, *and should have*, objected at that time. If Hernandez had any question about the sales price, he should have investigated before the offer was accepted. There is no possible justification for waiting years to address the issue. These observations establish beyond any possible doubt there is no merit to this argument.

We also note that there is no evidence Levatino had any involvement in the marketing of the home. He cannot be liable to Hernandez for something he did not do. Whether he was involved is now moot. When he opposed the motion at issue here,

9.

Hernandez was required to provide evidence that Levatino was responsible in some manner for the marketing of the home. It is now too late to claim such evidence exists.

### 2. Sale of the 2000 Ford Windstar Van

The next issue on which Hernandez focuses is the sale of the van. Hernandez contends Wife sold the van approximately four months after he filed a petition for legal separation. According to Hernandez, Levatino represented to the trial court that the van was sold "during [the] marriage." According to Hernandez, this misrepresentation to the trial court constituted fraud by Levatino. Hernandez also repeatedly asserts the van was never sold.

The record belies Hernandez's contention. Included in the documents Hernandez filed with the trial court is a copy of the check in the amount of $12,300 from Heritage Ford to Wife documenting Wife's sale of the van. Hernandez's claim that Wife never sold the van simply is wrong.

Hernandez's assertion that Levatino misrepresented facts to the trial court is similarly meritless. The record demonstrates *the parties agreed the van was community property, Wife sold the van, and Wife retained the proceeds from the sale*. No party suggested otherwise. Whether the van was sold before or after Hernandez filed his petition for legal separation is irrelevant.

Even if Hernandez's assertion that Levatino told the trial court the van was sold during the marriage is true, a contention on which we have no opinion, it was not material and could not form the basis for a lawsuit. An action for fraud must be based on a material representation. (*People ex rel. Harris v. Rizzo* (2013) 214 Cal.App.4th 921, 947.) It is absurd to claim the "representation" that the van was sold during the marriage was material, relevant, or significant in any way.

Since the parties agreed the van was a community asset and was sold by Wife, the only relevant and material issues were the sales price and the division of the proceeds. The record establishes that during the dissolution proceedings Hernandez knew the van

10.

had been sold and negotiations occurred over the division of the proceeds. If Hernandez was dissatisfied with the manner in which either issue was resolved, he should have filed a motion in the trial court before the proceeds were divided. There is no possible justification for waiting years to address the issue.

Hernandez also seems to suggest Wife was required to obtain permission from the trial court before she sold the van. If so, Hernandez should have addressed that matter to the trial court immediately. Once again, there is no possible justification for waiting years to address the issue.

### 3. Levatino's "appointment" as a trustee

Hernandez repeatedly asserts the trial court appointed Levatino to act as a trustee for Wife and him, thus imposing on Levatino a fiduciary obligation to Hernandez. This is simply wrong.

The trial court signed an order based on a stipulation reached between Hernandez and Wife. The stipulation provided the family residence would be sold, named a realtor to market the property, required all sale proceeds to be deposited into Levatino's client trust account, and required the parties to agree on the division of the sale proceeds. A later stipulation by the parties provided each party would receive certain credits and debits before the remaining proceeds were divided equally. This stipulation was signed by Hernandez, his attorney, and made an order of the court. And this is exactly what occurred. The proceeds from the sale were deposited into Levatino's client trust account and the funds were disbursed pursuant to the stipulation signed by Hernandez and his attorney. These events were completed by early 2004.

These facts establish (1) Levatino was not a court-appointed trustee; (2) Levatino was not a trustee for Hernandez; (3) Levatino did not owe Hernandez a fiduciary duty; (4) if Hernandez was dissatisfied with the division of the sale proceeds or the sale price of the residence, a motion should have been filed with the trial court at the time the events occurred (2003); (5) there is no possible justifiable reliance by Hernandez on Levatino

11.

because Hernandez was represented by counsel during this transaction; and (6) there is no possible justification for waiting years to address the issue(s).

*Conclusion*

In the final analysis, despite Hernandez's exhaustive and emotional presentation, there is no possibility he would have prevailed on the merits of the complaint. Thus, he did not carry his burden on Levatino's motion, and the trial court properly struck the complaint.

## II. Request for Judicial Notice

The next issue we discern from Hernandez's brief is his assertion the trial court erred when it denied a portion of his request for judicial notice and his subsequent request for reconsideration.

Hernandez's request for judicial notice filed in the trial court also is difficult to understand. It appears Hernandez was asking the trial court to enter an order that various allegations made in Hernandez's complaint were true as a matter of law. Specifically, Hernandez asserted the following acts *allegedly* committed by Levatino were undisputed "facts":

(1)  Failed to protect Hernandez's rights to his property;

(2)  Failed to provide to Hernandez all the monies to which he was entitled;

(3)  Failed to ensure that Hernandez received some unidentified vehicle pursuant to the agreement of the parties;

(4)  Concealed the whereabouts of the van;

(5)  Deceived Hernandez by asserting the van was sold;

(6)  Deceived the trial court by claiming the van was sold.

(7)  Favored Wife's interests over Hernandez's interests;

(8)  Treated Hernandez unfairly with respect to the division of marital assets; and

(9)  Improperly sold the family residence below market value by marketing it as a three-bedroom home instead of a five-bedroom home.

12.

To support the assertion that these "facts" were undisputed, Hernandez submitted a second request for judicial notice with various documents attached. The first group of documents appears to be from the California Department of Motor Vehicles. They relate to a 2000 Ford, which we assume is the van to which Hernandez repeatedly refers, although this fact is never established. The first document in this group appears to be a registration form indicating Jerry and Linda Davis as owners of the vehicle. The second document in this group is titled "Application for Transfer by New Owner." The new registered owners on this document are Jerry and Linda Davis, and the seller listed on the transfer is Heritage Ford. The document is dated December 23, 2001. The third document in this group is a certificate of title showing the registered owner as Hernandez or Wife, which was signed by Wife on September 13, 2001, transferring the van to Heritage Ford. The final documents relate to the sale of the vehicle to Davis.

The next document attached to the request for judicial notice appears to be a permit from the Stanislaus County Public Works Department related to the conversion of the garage to two bedrooms and which we presume is related to the family residence.

The last three documents attached to the request are various court documents, to which Levatino did not object. The trial court granted the request for judicial notice as to the court documents, but denied the remainder of the request.

*Governing statutes*

Requests for judicial notice are governed by Evidence Code sections 450 through 453. Errors in denying judicial notice, if any occurred, are subject to harmless error analysis. (*Aquila, Inc. v. Superior Court* (2007) 148 Cal.App.4th 556, 569.) Evidence Code sections 451 and 452 are relevant here.

Evidence Code section 451 requires the trial court to take judicial notice of the following six categories of items:

(1) The decisional, constitutional, and statutory laws of California and the United States.

13.

(2)  "Any matter made a subject of judicial notice by" Government Code sections 11343.6, 11344.6, or 18576, or "by section 1507 of Title 44 of the United States Code."

(3)  Rules of professional conduct for members of the State Bar.

(4)  Rules of pleading, practice, and procedure of the federal judicial system.

(5)  "The true signification of all English words and phrases and of all legal expressions."

(6)  "Facts and propositions of generalized knowledge that are so universally known that they cannot reasonably be the subject of dispute."  (Evid. Code, § 451, subds. (a)-(f).)

Evidence Code section 452 gives the trial court discretion to take judicial notice of the following eight categories:

(1)  The decisional law and statutes of other states, as well as acts of Congress.

(2)  Regulations and legislative enactments of the federal government or any other public entity.

(3)  Official acts of the federal government or any other state.

(4)  Records of any court in California, the United States, or any other state.

(5)  Rules of court of any court in California, the United States, or any other state.

(6)  The laws of an organization of nations and public entities in foreign nations.

(7)  "Facts and propositions that are of such common knowledge within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute."

(8)  "Facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."  (Evid. Code, § 452, subds. (a)-(h).)

*Analysis*

None of Hernandez's assertions fall within the requirements of Evidence Code section 451.  The only possible applicable category would be subdivision (f) of this

14.

section, which requires the trial court to take judicial notice of facts and proposition that are universally known. These facts would include such matters as there are 5,280 feet in a mile, or 60 minutes in an hour, or 31 days in January. Hernandez's assertions do not fit within this category.

Also, Hernandez's assertions do not fit within any of the requirements of Evidence Code section 452. His assertions are not propositions of common knowledge, nor are they "not reasonably subject to dispute." Indeed, Hernandez's assertions fall into the opposite category—propositions that *are the subject of dispute* and therefore would require a trial to resolve *if they had been raised timely*. Because they were not raised timely, as explained above, these assertions no longer have any legal significance.

We now turn to the documents submitted by Hernandez. Exhibit A is the group of documents that appear to be from the California Department of Motor Vehicles. The documents appear to have been stamped with the seal of the department. These documents, however, were not properly authenticated as required by Evidence Code section 1531. Moreover, Hernandez failed to provide admissible evidence that these documents were indeed related to the van in question. Accordingly, the trial court did not err in refusing to grant judicial notice to these documents. Even if there were error, any error would be harmless, as explained above.

The other items submitted by Hernandez appear to be the permit to convert the garage of the family residence into two bedrooms. Again, this document was not properly authenticated pursuant to Evidence Code section 1531. Moreover, this document appears to be nothing more than a permit application. Accordingly, the trial court did not err and any possible error was harmless as explained above.

### Motion for reconsideration

Finally, we address Hernandez's motion for reconsideration of the trial court's denial of his request for judicial notice. In this motion, Hernandez presented additional

15.

documents and attempted to present testimony to establish that the documents were related to the van and to the residence remodel. The trial court denied the motion.

Motions for reconsideration are governed by section 1008. Subdivision (a) of this section provides, as relevant here, that when an application for an order has been refused in whole or part, any party affected by the order may make an application to the judge to reconsider the matter and make a new order. The application must be based on "new or different facts, circumstances, or law," and it must be made "within 10 days after service upon the party of written notice of entry of the order." (*Ibid.*)

The trial court denied Hernandez's application because it was untimely. The initial order denying Hernandez's request for judicial notice was issued on March 8, 2012. The minute order was served on March 9, 2012. No notice of entry of order appears in the record. The trial court thus erred to the extent it denied the motion on the basis that it was untimely.

Nonetheless, there was no merit to the motion. "A motion for reconsideration may only be brought if the party moving for reconsideration can offer 'new or different facts, circumstances, or law' which it could not, with reasonable diligence, have discovered and produced at the time of the prior motion. [Citations.] A motion for reconsideration will be denied absent a strong showing of diligence. [Citation.]" (*Forrest v. Department of Corporations* (2007) 150 Cal.App.4th 183, 202-203, disapproved on other rounds in *Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1172, fn. 3.)

The additional documents on which Hernandez based his motion for reconsideration were all related to the remodel of the family residence, which occurred in approximately 1999, or the sale of the van, which occurred in 2001. Hernandez did not attempt to establish that he was diligent in seeking these documents, nor can we envision any possible explanation that would satisfy the diligence requirement.

Hernandez applied for the permits to remodel the family residence and was aware that the process occurred. This is substantiated by the 2003 letter from his attorney to the

16.

real estate broker hired to sell the house making her aware that the conversion was properly permitted. Hernandez could have obtained all of the relevant records from the building department as soon as the issue arose, yet failed to do so. He was not diligent.

The same conclusion is reached when the sale of the van is considered. Hernandez alleged that he did not receive proper credit from the proceeds of the sale of the van. If this truly were an issue, and it is not, the documents could have been obtained at that time, which was no later than 2004. Again, Hernandez's failure diligently to seek these documents precluded the trial court from granting his motion for reconsideration.

## DISPOSITION

The judgment is affirmed. Levatino is awarded his costs on appeal.

_____

CORNELL, Acting P.J.

WE CONCUR:


_____

GOMES, J.


_____

PEÑA, J.

17.