Filed 5/17/21  Vaca v. Howard CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
SECOND APPELLATE DISTRICT
DIVISION FOUR

| | |
|---|---|
| ANA VACA et al., | B286663 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC479045) |
| v. | |
| NEIL HOWARD et al. | |
| Defendants and Respondents. | |

APPEAL from judgments of the Superior Court of Los Angeles County, Randolph M. Hammock, Judge. Affirmed.

Law Offices of Nick A. Alden, Nick A. Alden, for Plaintiffs and Appellants.

Gusdorff Law, Janet Gusdorff for Defendant and Respondent Neil Howard.

Nelson & Fulton, Henry Patrick Nelson and Elise H. Hur for Defendant and Respondent Tiffany Garrard.

1

## INTRODUCTION

Appellant Ana Vaca sued her former attorney, Neil M. Howard, and his alleged agents, employees, and co-conspirators, Sheldon Lewenfus and Tiffany Garrard, for damages caused by an allegedly wrongful sheriff's sale of her home. Ana[1] contends the sheriff's sale of her residence was invalid. She further contends the court erred by: (1) sustaining Howard's demurrer to her causes of action for conspiracy to wrongfully sell real property and wrongful eviction contained in her third amended complaint; (2) sustaining Howard's demurrer to her causes of action for wrongful sale of property, conversion, and breach of fiduciary duties contained in her fourth amended complaint; (3) granting Howard's motion for summary judgment on her remaining causes of action; and (4) sustaining Garrard's demurrer to her fourth amended complaint without leave to amend. For the reasons discussed below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This is our third appellate opinion in this lengthy litigation arising from a judgment against Ana and a sheriff's sale of Ana's residence to satisfy the judgment.[2] The earlier opinions are law of

---

1      We refer to Ana Vaca and her brother, Enrique Vaca, who have the same last name, and to their sister Laura Garcia, by their first names to avoid confusion. No disrespect is intended. As in a previous opinion in this litigation, all references to Ana are intended to include her husband, co-plaintiff and co-appellant German Valera, except where the context demonstrates that the references are to Ana alone. (*Vaca v. Howard* (Oct. 29, 2015, B256065) [nonpub. opn.]).

2      As discussed below, this is Ana's second appeal in this case, and Ana also filed an appeal in Los Angeles County Superior

the case. Therefore, as best we can, we will limit our discussion of legal issues to topics relevant to this appeal and not replow the entire litigation. The trial court rulings that are the subject of this appeal are discussed under heading below, but considerable background information is necessary to place those rulings in context.

We begin by quoting at length from an overview of the litigation contained in one of our earlier opinions, to introduce the parties and provide necessary background. (*Vaca v. Lewenfus* (Feb. 5, 2015, B249885) [nonpub. opn.].)

"As will be discussed, Howard played a significant role in several prior lawsuits in which appellant (Ana) was a party. Howard represented Ana and her brother Enrique as plaintiffs in a prior wrongful death action, in which he negotiated a settlement in their favor ([Super. Ct. L.A. County] No. GC040014). After Ana invested a large portion of the settlement proceeds in her family residence, Howard sued Ana on behalf of Enrique, who obtained a judgment against Ana for misappropriating the wrongful death settlement proceeds ([Super. Ct. L.A. County] No. GC041483)." (*Vaca v. Lewenfus* (Feb. 5, 2015, B249885) [nonpub. opn.] [fn. omitted].) [We will refer to Case No. GC041483 as "the misappropriation action."] Ana then sued Enrique, Laura, Howard, and Howard's associates for fraud ([Super. Ct. L.A. County] No. BC436404).

On February 15, 2012, "Ana filed [this case] ([Super. Ct. L.A. County] No. BC479045) against Howard and Lewenfus after her family residence was sold in a sheriff's sale. The sale was conducted pursuant to an order for sale that Howard had obtained on behalf of Enrique as Ana's judgment creditor in the misappropriation action (No. GC041483). Ana contends that in advance of the sale, Howard arranged to have Lewenfus purchase her home for the grossly inadequate price of $10,000. Howard

Court Case No. BC436404, resulting in another opinion. (*Vaca v. Howard* (Oct. 29, 2015, B256065) [nonpub. opn.]).

allegedly conspired with Lewenfus to acquire Ana's property for a fraction of its fair market value by suppressing all other bids, and, in particular, by failing to make a credit bid on behalf of Enrique, whose judgment against Ana for $158,565.89 would have easily trumped the $10,000 bid by Lewenfus. Ana claims the fraudulent sale to Lewenfus resulted in the loss of her family residence for a fraction of its fair market value, and left her judgment to Enrique unpaid." (*Vaca v. Lewenfus* (February 5, 2015, B249885) [nonpub. opn.].)

## 1. Prior Wrongful Death Action

"In 2007, Howard filed an action on behalf of Ana and Enrique against the Pasadena Hospital Association for the wrongful death of their mother, who had 12 children. (*Vaca v. Pasadena Hospital Association* (Super. Ct. L.A. County No. GC040014 (wrongful death action).) Ana and Enrique are California residents, as is their sister Laura; their other nine siblings live in Mexico. After Howard settled the wrongful death action for $1.275 million, he issued two checks to Ana and instructed her to settle with her 11 siblings. One of the checks was for $718,931.67 and the other for $167,291.85. The aggregate amount was $886,223.52.

"Ana distributed $140,000.00 of the wrongful death settlement proceeds to Enrique, and $50,000 to Laura. Ana invested most if not all of the remaining settlement proceeds in her family residence, which she allegedly purchased with cash." (*Vaca v. Lewenfus* (Feb. 5, 2015, B249885) [nonpub. opn.]).

## 2. Prior Misappropriation Action

"A dispute arose between Ana and Enrique with respect to the distribution of the wrongful death settlement proceeds. Howard represented Enrique in an underlying lawsuit against

Ana for misappropriation of those proceeds. (*Vaca v. Vaca* (Super. Ct. L.A. County No. GC041483) (misappropriation action).)

"Howard originally filed the misappropriation action on behalf of Ana's 11 siblings. The nine siblings in Mexico dismissed their claims against Ana before trial. Laura, who denied retaining Howard as her attorney, represented herself at trial.

"Enrique, represented by Howard, sought to apportion the $718,931.67 wrongful death settlement check that Ana had received from Howard with instructions to settle with her siblings. Subject to offsets for Ana's prior payments of $140,000.00 to Enrique and $50,000.00 to Laura, Enrique and Laura each claimed roughly one-third of the settlement check. Howard represented to the court that Enrique's share of the settlement check was $237,643.89, and Laura's was $242,543.89.

"Ana, acting without an attorney, was precluded by a discovery sanction from presenting any testimony at trial. (According to her appellate counsel, Ana does not read or write Spanish, her native language, and does not understand English.)

"The trial court apportioned $237,643.89 of the settlement check to Enrique, and after an offset of $140,000.00, granted a net award of $97,643.89. In addition, Enrique received $9,309.00 in prejudgment interest, $50,000.00 in punitive damages, and $1,613.00 in costs, for a total judgment of $158,565.89.

"The trial court apportioned $242,543.89 of the settlement check to Laura, and after an offset of $50,000.00, granted a net award of $192,543.89. In addition, Laura received $18,357.00 in prejudgment interest, $25,000 in punitive damages, and $530.00 in costs, for a total judgment of $236,530.89." (*Vaca v. Lewenfus* (Feb. 5, 2015, B249885) [nonpub. opn.]).

### 3. Prior Fraud Action

On April 26, 2010, "Ana sued Enrique, Laura, Howard, and Howard's associates, Aldo Flores and Oscar Valencia, for fraud.

(*Vaca v. Howard* (Super. Ct. L.A. County No. BC436404 (prior fraud action).)" (*Vaca v. Lewenfus* (Feb. 5, 2015, B249885) [nonpub. opn.].) Specifically, Ana alleged Howard "breached his fiduciary duties and committed professional negligence. Six months after the complaint was filed, Howard filed a petition to compel arbitration pursuant to Code of Civil Procedure section 1281.2. The trial court granted the petition, and we denied [Ana's] petition for a writ of mandate. [Citation.] [Ana] did not participate in the arbitration proceedings, which culminated in an order granting Howard's motion for summary judgment. Approximately two years after the arbitrator issued his order, Howard filed a petition to confirm the award pursuant to section 1285. [Ana] timely appealed from the court's grant of that petition[3]," and a different panel of this court affirmed. (*Vaca v. Howard* (Oct. 29, 2015, B256065) [nonpub. opn.] [fn. omitted].)

### 4. Execution Sale of Ana's Residence

"In order to enforce Enrique's judgment against Ana in the misappropriation action (No. GC041483), Howard sought an order for sale of Ana's residence. In an accompanying declaration, Howard stated that Ana's residence had a fair market value of $400,000.00. In his April 2, 2010 declaration in support of an order to show cause concerning sale of the residence (OSC), Howard stated, based on information provided by Enrique, that the residence was occupied by Ana, her husband, and her two sons, and that the statutory homestead exemption available to Ana was $100,000. ([Code Civ. Proc.,] § 704.760, subd. (b).)

"At the OSC hearing, the trial court (Judge Mary Thornton House) relied on Howard's April 2, 2010 declaration to determine that the statutory homestead exemption available to Ana was $100,000.00 ([Code Civ. Proc.,] § 704.760, subd. (a)(2)), and the

---

3       Judge Deirdre Hill was the trial judge at that time.

fair market value of the home was $400,000.00. The court issued an order on June 18, 2010, authorizing a sheriff's sale of Ana's property subject to three requirements. First, any bid must exceed $100,000.00 (the amount of the statutory homestead exemption available to Ana), plus the aggregate amount of all liens and encumbrances on the property. Second, any bid must equal or exceed 90 percent of the appraised fair market value of $400,000.00, thus establishing a minimum bid requirement of $360,000.00. Third, the sale proceeds were to be applied first to the satisfaction of Enrique's judgment, plus costs and interest; then to the satisfaction of Laura's judgment, plus costs and interest; then to the bond surety company in the amount of $100,000.00; then to Ana." (*Vaca v. Lewenfus* (February 5, 2015, B249885) [nonpub. opn.] [fns. omitted].)

The June 18, 2010 order was superseded by a September 9, 2010 order "entered by the trial court in the underlying misappropriation action (No. GC041483). The new order for sale *eliminated* the $100,000.00 statutory homestead exemption and 90 percent of the appraised fair market value minimum bid requirement for the June 18, 2010 order for sale." (*Vaca v. Lewenfus* (February 5, 2015, B249885) [nonpub. opn.] [fn. omitted.].)[4]

---

4     We noted in our previous opinion that Howard submitted a declaration on September 5, 2010 in the misappropriation action stating "that because there was no recorded homestead exemption, Ana had the burden of showing that the residence qualified as a homestead. . . . [¶] Howard's statement—that the original order of sale 'appropriately provided that the subject property is *not* subject to any homestead exemption' (italics added)—misrepresented the fact that the court had imposed a statutory exemption of $100,000.00, based on Howard's April 2, 2010 declaration. In his April 2 declaration, which was filed in compliance with the requirements of [Code of Civil Procedure] section 704.760, Howard stated that the dwelling was occupied by Ana, her husband, and her two sons, and that the available

On November 3, 2010, "Lewenfus purchased Ana's residence at a sheriff's sale. His successful bid of $10,000 was the only bid received at the sale." (*Vaca v. Lewenfus* (Feb. 5, 2015, B249885) [nonpub. opn.].)

### 5. Other Prior Actions and Ana's Bankruptcy Petition

"After the property was purchased by Lewenfus for $10,000, Ana refused to vacate the home and filed a bankruptcy petition [on November 24, 2010]. Lewenfus initiated an unlawful detainer action and obtained a judgment against Ana in December 2010 (the UD Action). The bankruptcy court granted Lewenfus's motion for relief from the automatic stay in February 2011. In February or March 2011, Ana and Lewenfus signed a settlement agreement, but the validity of that agreement is disputed.

"In February 2011, Ana's new attorney, Nick A. Alden, recorded a lis pendens against the disputed residence, erroneously stating that Lewenfus was a defendant in the prior fraud action that Ana had filed against Howard (No. BC436404). Because he was not a party to that action, Lewenfus sought leave to intervene in order to expunge the lis pendens. The lis pendens was expunged in March 2012." (*Vaca v. Lewenfus* (Feb. 5, 2015, B249885) [nonpub. opn.].)

On March 24, 2011, Vaca was granted a discharge in her bankruptcy case.

"Ana also filed a lawsuit against Howard and Lewenfus in June 2011 (No. SC112953). That lawsuit was dismissed in November or December 2011 for failure to prosecute." (*Vaca v. Lewenfus* (Feb. 5, 2015, B249885) [nonpub. opn.].)

---

homestead exemption was $100,000.00." (*Vaca v. Lewenfus* (Feb. 5, 2015, B249885) [nonpub. opn.].)

### 6. Present Action

Ana filed the present action against Howard and Lewenfus in February 2012 (No. BC479045).[5] On March 1, 2012, Ana filed a first amended complaint (FAC). Lewenfus moved to strike the FAC under the anti-SLAPP statute, arguing the causes of action arose from Howard's protected petitioning activities, and were subject to the litigation privilege. The trial court (Judge Weintraub) granted the special motion to strike the complaint against Lewenfus, finding the claims arose from Howard's protected speech or petitioning activities, and Ana did not demonstrate a probability of success on the merits of her claims because she produced no evidence of wrongful or dishonest conduct on the part of Lewenfus. (*Vaca v. Lewenfus* (Feb. 5, 2015, B249885) [nonpub. opn.].)

On February 27, 2013, Ana filed a second amended complaint (SAC) against Howard, Lewenfus, and the Los Angeles County Sheriff's Department (LASD). The court sustained LASD's demurrer to the SAC, and dismissed LASD from the action.

In 2013, Ana filed a third amended complaint (TAC) alleging causes of action for: (1) wrongful sale of real property in violation of statutes (first cause of action); (2) conspiracy to defraud (second cause of action); (3) conspiracy to wrongfully sell real property in violation of statutes (third cause of action); and (4) wrongful eviction (fourth cause of action). In response, Howard filed a demurrer contending the TAC failed to allege sufficient facts to constitute a cause of action for each cause of action alleged. The trial court overruled Howard's demurrer to the first cause of action and sustained the demurrer without

---

5      This case was initially assigned to Judge Debre K. Weintraub. The case was reassigned to Judge Randolph M. Hammock, effective January 1, 2017.

leave to amend as to the second, third, and fourth causes of action.

On February 5, 2015, a different panel of this court reversed the trial court's grant of Lewenfus's special motion to strike. (*Vaca v. Lewenfus* (Feb. 5, 2015, B249885) [nonpub. opn.].) It held "the gravamen of the complaint attacks the fraudulent suppression of bids, particularly by the judgment creditor, in order to facilitate the pre-arranged sale to Lewenfus for an inadequate price." (*Ibid.*) It therefore concluded "that the conduct at issue, the fraudulent suppression of bids at a sheriff's sale, does not arise from protected petitioning activities." (*Ibid.*)

After the reversal of the trial court's grant of Lewenfus's special motion to strike, the trial court, on its own motion, reconsidered its ruling on Howard's demurrer to the TAC and reinstated the second cause of action for conspiracy to defraud against Howard.

In March 2016, Ana substituted in Garrard, an employee of the LASD and the person "in charge on behalf of the LASD [to] conduct the sale of [Ana's residence]" as a defendant.

On October 6, 2016, Ana filed a fourth amended complaint (4AC) alleging causes of action for: (1) misappropriation of plaintiffs' property (first cause of action); (2) conspiracy to defraud (second cause of action); (3) wrongful sale of the property (third cause of action); (4) conversion (fourth cause of action); and (5) breach of fiduciary duties (fifth cause of action). In response, Howard filed a demurrer and a motion for summary judgment.

The trial court (Judge Hammock) overruled Howard's demurrer to the first and second causes of action. It held the first cause of action for misappropriation was not barred by res judicata because the prior fraud action "did not contain any allegations pertaining to an alleged conspiracy to sell the property for an inadequate price." It further rejected Howard's argument that the second cause of action for conspiracy to defraud was not pled with the requisite specificity for pleading

10

fraud-based causes of action. The court sustained Howard's demurrer without leave to amend, however, to the third, fourth, and fifth causes of action. Regarding the third cause of action, the court held "[b]ecause the third cause of action in the 4AC is based on the alleged violation of the same statutes as were pled in the third cause of action in the [T]AC, Plaintiffs' re-assertion of the third cause of action against Defendant Howard in the 4AC is in violation of the Court's [order on Howard's demurrer to the TAC]." It further held the fourth cause of action for conversion applies to personal property (not real property) and the fifth cause of action was barred by the statute of limitations.

Because only the first and second causes of action remained after the trial court's ruling on Howard's demurrer to the 4AC, the trial court held Howard's motion for summary judgment as it pertained to the third, fourth, and fifth causes of action was moot, and proceeded to address the motion with respect to the first and second causes of action only. The trial court granted Howard's motion on the ground that the arbitrator's award in the prior fraud action operated as "collateral estoppel as to the issue of judicial estoppel based on [Ana's] failure to list or identify the claims she had against Howard in her Chapter 7 bankruptcy petition, schedules and statement of affairs."

The trial court entered judgment in favor of Howard on November 2, 2017.

Garrard separately filed a demurrer to the 4AC on the grounds that Ana's claims were barred for failure to timely present a mandatory claim pursuant to Government Code section 950.2 and 945.4, immunity for executing a writ and relying on information provided by the judgment creditor, and the litigation privilege. The trial court sustained Garrard's demurrer without leave to amend on the ground that Ana's causes of action were barred for failure to comply with the government claims requirements, and entered judgment in favor of Garrard.

11

Ana appeals from the judgments entered in favor of Howard and Garrard.

## DISCUSSION

### 1.      Validity of the Sheriff's Sale

Ana contends the sheriff's sale of her residence on November 3, 2010 was invalid. She argues the September 9, 2010 order for sale of her residence issued in Case No. GC041483 violated the automatic stay imposed by Ana's appeal, filed on August 9, 2010, of the June 18, 2010 order issued in that case. (See Code Civ. Proc., § 916, subd. (a) ["the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order . . . ."]).

We lack jurisdiction to review the validity of the September 9, 2010 order issued in Case No. GC041483. (See *Soldate v. Fidelity National Financial, Inc.* (1998) 62 Cal.App.4th 1069, 1073 ["'Our jurisdiction on appeal is limited in scope to the notice of appeal and the judgment or order appealed from.' [Citation.]"). Here, Ana appealed from the judgments of dismissal in favor of Howard and Garrard in Case No. BC479045. We may review any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgments appealed from in this case (Code Civ. Proc., § 906), not orders issued in a separate action. Ana chose to abandon her appeal in Case No. GC0141483 (see Case No. B226512). We lack jurisdiction to review the validity of an order issued in a case underlying Ana's abandoned appeal.

## 2.    Howard's Motion for Summary Judgment

### A. Standard of Review

"A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (*Id.*, subd. (p)(2).) If the defendant meets this burden, the burden shifts to the plaintiff to present evidence creating a triable issue of material fact. (*Ibid.*) A triable issue of fact exists if the evidence would allow a reasonable trier of fact to find the fact in favor of the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [citation.])

"We review the trial court's ruling on a summary judgment motion de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opponent. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460 [citation.]) We must affirm a summary judgment if it is correct on any of the grounds asserted in the trial court, regardless of the trial court's stated reasons. [Citation.]" (*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 636-637.)

### B. Howard is Entitled to Summary Judgment

Howard moved for summary judgment, asserting, among other things, that Ana was collaterally estopped from asserting her claims against him in the 4AC. In the prior fraud action, the arbitrator granted Howard's motion for summary judgment based on the doctrine of judicial estoppel because Ana failed to identify her claims against Howard in her bankruptcy petition. Howard

13

therefore argues Ana's claims in this action for misappropriation and conspiracy to defraud are also barred by the doctrine of judicial estoppel because Ana similarly failed to list those claims in her bankruptcy petition. We agree.

"The doctrine of collateral estoppel precludes relitigation of an issue previously adjudicated if: (1) the issue necessarily decided in the previous suit is identical to the issue sought to be relitigated; (2) there was a final judgment on the merits of the previous suit; and (3) the party against whom the plea is asserted was a party, or in privity with a party, to the previous suit." (*Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 910.)[6]

In support of his motion for summary judgment, Howard submitted Ana's complaint in the prior fraud action, filed April 26, 2010. In that action, Ana alleged, among other things, that Howard breached his fiduciary duties by filing the misappropriation action against her, and "dragg[ing[ [her] through debtor examinations and fil[ing] a motion to sell her

---

6      The trial court and the parties use the terms "res judicata" and "collateral estoppel" without clearly differentiating the concepts. Our Supreme Court in *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823-825 explained the terminological confusion arising from the imprecise use of the umbrella term "res judicata," and explained the differences between claim preclusion and issue preclusion/collateral estoppel: "We have frequently used 'res judicata' as an umbrella term encompassing both claim preclusion and issue preclusion, which we described as two separate 'aspects' of an overarching doctrine. [Citations.] Claim preclusion, the ""primary aspect"" of res judicata, acts to bar claims that were, or should have been, advanced in a previous suit involving the same parties. [Citation.] Issue preclusion, the ""secondary aspect"" historically called collateral estoppel, describes the bar on relitigating issues that were argued and decided in the first suit. [Citation.]" (*Id.* at pp. 823-824.) Here, "collateral estoppel" is the more accurate term to use on these facts and we use it accordingly.

14

home to satisfy the judgments." As a result of Howard's alleged breach of fiduciary duties, Ana "suffered damages in the sum of about $450,000.00, and interest[ ], attorneys' fees, and risk to have her family residence sold to satisfy the void judgment obtained in the [misappropriation action]." Howard also submitted the arbitrator's January 25, 2013 order granting his motion for summary judgment in the prior fraud action: "The arbitrator find[s] that there was no triable issue of any material fact an[d] that the moving party is entitled to judgment as a matter of law based upon the legal principles of judicial estoppel[7] given that [t]he plaintiff filed this instant lawsuit on April 26, 2010, and seven months later filed a petition for relief under Chapter 7 of the Bankruptcy Code and failed to schedule any claim which she now seeks to assert against the defendant/moving party. On March 24, 2011, plaintiff was granted a discharge under section 727 of the Bankruptcy Code. Therefore, . . . plaintiff is barred from pursuing any claims against the moving defendant.[8]" Thus, as the trial court in this action stated, "the arbitrator's decision was based on the fact that after [Ana] filed [the prior fraud action] on April 26, 2010, [ ] on November 24, 2010 [she] filed a petition for relief under Chapter 7 of the Bankruptcy Code and failed to schedule any claim she

---

7        "The elements of judicial estoppel are '(1) the same party has taken two positions; (2) the two positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.' [Citations.]" (*Owens v. County of Los Angeles* (2013) 220 Cal.App.4th 107, 121.)

8        Failure to list potential legal claims in bankruptcy schedules may bar litigation of such claims based on the doctrine of judicial estoppel. (See *Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1614.)

15

then sought to assert against Howard. It was not until March 24, 2011 that the bankruptcy court granted [Ana] a discharge." The trial court confirmed the arbitration award in the prior fraud action, and a different panel of this court affirmed the judgment of the trial court. (*Vaca v. Howard* (Oct. 29, 2015, B256065) [nonpub. opn.].)

In the present action, Ana alleged in her 4AC that Howard "entered into a conspiracy with Defendants [Lewenfus] and [Garrard] to fraudulently suppress [ ] bids in order to facilitate a pre-arranged sale to [Lewenfus] for an inadequate price." But Ana knew—prior to the discharge of her bankruptcy case—that her house sold at a sheriff's sale for $10,000 to Lewenfus. Lewenfus filed the UD Action against Ana to obtain possession of the subject property on November 24, 2010—the same day Ana filed her bankruptcy petition.[9] On December 8, 2010, the court entered a default judgment against Ana in the UD Action, with restitution of the premises ordered. On February 24, 2011, the writ of possession was returned. Thus, as the trial court correctly stated, "as of the date [Ana] was evicted, she would have known that the property was sold at a sheriff's sale by attorney Howard—and thus she had a claim against him for dispossessing her of the property. The fact that [Ana] may have subsequently developed the theory that Howard was working in concert with Lewenfus and Garrard does not excuse her failure to list the known claim against Howard. Yet, as the arbitrator found, [Ana] did not schedule any claim against Defendant Howard."

This demonstrates the underlying facts giving rise to Ana's claims against Howard for misappropriation of her property and conspiracy to defraud were known to her before the bankruptcy court granted Ana a discharge. Thus, collateral estoppel precludes Ana from litigating whether those claims are barred based on the doctrine of judicial estoppel because there has

---

9 On its own motion, the trial court took judicial notice of the records in the UD Action.

16

already been a finding that Ana cannot assert claims against Howard that were known pre-discharge and not listed in Ana's bankruptcy schedules. (See, e.g., *Kelly v. Vons Companies, Inc.* (1998) 67 Cal.App.4th 1329, 1336-1337 [noting "cases have concluded that findings made during arbitrations may be given collateral estoppel effect in a subsequent lawsuit. [Citations.]"].)[10]

Moreover, although German Valera was not a party in the prior fraud action, he was in privity with Ana for purposes of collateral estoppel. "Privity refers to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is 'sufficiently close' so as to justify applying collateral estoppel. [Citation.] Under California law, spouses are in privity with each other where the cause of action in the prior litigation was 'community in nature' and the 'proceeds of any judgment that might have been recovered . . . would have belonged to both husband and wife, as community property.' [Citations.]." (*Mueller v. J.C. Penney Co.* (1985) 173 Cal.App.3d 713, 723.) Here, Exhibit A to the 4AC is a grant deed reflecting the subject property was held by Ana and Valera as husband and wife as joint tenants. Thus, any recovery by Ana in the prior lawsuit would have been presumptively community property. (See, e.g., *In re Brace* (2020) 9 Cal.5th 903, 931 ["If the joint

---

10    Ana makes an argument here that we previously rejected in connection with her appeal of the order confirming the arbitration award. In that appeal, she argued the arbitration award no longer has a legal basis because she "subsequently reopened her bankruptcy proceedings to correct the omission of her claims against Howard." (*Vaca v. Howard* (Oct. 29, 2015, B256065) [nonpub. opn.].) Similarly, here, Ana again argues she "inadvertently omitted" her claims against Howard and the bankruptcy court granted her motion to reopen the case; thus, she argues, judicial estoppel should not have applied. As stated in our opinion confirming the arbitration award, however, "it would be improper to review the substantive merits of the arbitrator's award" because arbitrators' decisions cannot be reviewed for legal or factual errors. (*Ibid.*)

tenants are married, a creditor or third party purchaser will be on notice that the property is presumptively community and that an alienation or encumbrance of that property must be joined by both parties."]; see also Fam. Code, § 2581 ["For the purpose of division of property on dissolution of marriage or legal separation of the parties, property acquired by the parties during marriage in joint form, including property held in tenancy in common, joint tenancy, or tenancy by the entirety, or as community property, is presumed to be community property."].) Accordingly, Howard met his burden to establish a complete defense—collateral estoppel—to the remaining causes of action in the 4AC.

The burden therefore shifted to Ana to present evidence creating a triable issue of material fact. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) She failed to do so. Ana did not present evidence disputing the finality of the prior fraud action nor that the issue decided in the prior fraud action was different from the issue sought to be relitigated. Instead, she argued "injustice would result if the litigation in this case is foreclosed." (See *Consumers Lobby Against Monopolies v. Public Utilities Com.* (1979) 25 Cal.3d 891, 902 [When the issue decided in the prior action is "a question of law rather than of fact," collateral estoppel will not be applied "if injustice would result or if the public interest requires that relitigation not be foreclosed. [Citations.]"].) Here, Howard relies on the factual findings of the arbitrator (i.e., Ana failed to list her claims against Howard in her bankruptcy petition despite knowledge of such claims when she filed her petition). In any event, Ana failed to carry her burden to demonstrate injustice would occur. As the trial court explained, "there has been [an] inadequate showing by [Ana] to demonstrate that such a 'gross injustice' would occur. Just because things may appear to be suspicious in nature, [does not] mean that they have actually occurred, as alleged. [¶] . . . [Ana] rel[ies] mainly upon suspicion and speculation – not preponderating evidence." A party "'cannot avoid summary

18

judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact.' . . . [Citation.]" (*Dollinger DeAnza Associates v. Chicago Title Ins. Co.* (2011) 199 Cal.App.4th 1132, 1144-1145.) We conclude the trial court properly granted summary judgment in favor of Howard.

3.    **Howard's Demurrers to the Third and Fourth Amended Complaints**

Our conclusion that summary judgment was properly granted in favor of Howard is dispositive with respect to Howard. All of Ana's claims against Howard in this action were known prior to the discharge of Ana's bankruptcy because all claims were premised on the allegation that Howard conspired with Lewenfus and Garrard to suppress bids at the sheriff's sale of Ana's residence. Thus, even if those claims had survived demurrer, they would not have survived summary judgment. Ana did not identify in the trial court any way to amend her complaint to add a claim that would have survived summary judgment, i.e., a claim against Howard that was not known prior to the discharge of her bankruptcy. Accordingly, we need not address whether the court erred in partially sustaining Howard's demurrers to the causes of action for conspiracy to wrongfully sell real property in violation of statutes and wrongful eviction in the TAC, and causes of action for wrongful sale of the property, conversion, and breach of fiduciary duties in the 4AC. (See, e.g. *Red Mountain, LLC v. Fallbrook Public Utility Dist.* (2006) 143 Cal.App.4th 333, 347 ["[A]n appellant has the burden to show not only that the trial court erred but also that the error was prejudicial. [Citations.]"].)

19

## 4. Garrard's Demurrer to the Fourth Amended Complaint

Ana contends the trial court erred in holding her claims against Garrard in the 4AC were barred by her failure to comply with the Government Claims Act. "[W]e apply the de novo standard of review in an appeal following the sustaining of a demurrer . . . .[Citation.]" (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247.)

The Government Claims Act provides that "a claim against a public employee or former public employee for injuries resulting from acts or omissions in the course of his or her employment must be presented if a claim against the employing entity for the same injury must be presented. (Gov. Code, § 950.2). This is so because a public entity is required to pay a judgment against its employee 'for an injury arising out of an act or omission occurring within the scope of his or her employment as an employee of the public entity.' (Gov. Code, § 825, subd. (a).)." (*People ex rel. Harris v. Rizzo* (2013) 214 Cal.App.4th 921, 939.)

"[Government Code] [s]ection 915(a) provides, 'A claim . . . shall be presented to a local public entity by either of the following means: [¶] (1) Delivering it to the clerk, secretary or auditor thereof. [¶] (2) Mailing it to the clerk, secretary, auditor, or to the governing body at its principal office.' Section 915(e)(1) clearly and narrowly sets forth how actual receipt may meet the presentation requirement: 'A claim . . . shall be deemed to have been presented in compliance with this section even though it is not delivered or mailed as provided in this section *if*, within the time prescribed for presentation thereof, any of the following apply: [¶] (1) It is *actually received* by the clerk, secretary, auditor or board of the local public entity.' (Italics added.)" (*DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 990 (*DiCampli-Mintz*).)

20

"Even if the public entity has actual knowledge of facts that might support a claim, the claims statutes still must be satisfied. [Citation.]" (*DiCampli-Mintz*, *supra*, 55 Cal.4th at p. 990.) "A goal of the Government Claims Act is to eliminate confusion and uncertainty resulting from different claims procedures. [Citation.]" (*Ibid*.) "'[T]he purpose of the claims statutes is not to prevent surprise, but "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. [Citations.] It is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim." [Citation.] The claims statutes also "enable the public entity to engage in fiscal planning for potential liabilities and to avoid similar liabilities in the future." [Citations.]'" (*Id*. at pp. 990-991, quoting *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 738 (*City of Stockton*).) "The claimant bears the burden of ensuring that the claim is presented to the appropriate public entity. [Citation.]" (*DiCampli-Mintz*, *supra*, 55 Cal.4th 983 at p. 991, fn. omitted.)

"'"[N]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon . . . or has been deemed to have been rejected . . . ." ([Gov. Code,] § 945.4.) "Thus, under these statutes, failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." [Citation.]'" (*DiCampli-Mintz*, *supra*, 55 Cal.4th at p. 990, quoting *City of Stockton, supra*, 42 Cal.4th at pp. 737-738.)

In paragraphs 38 and 39 of her 4AC, Ana alleges her counsel sent two letters to "Sheriff Leroy D. Baca Los Angeles Sheriff's Department," presenting her claims. She does not allege, however, that her counsel either mailed her claim to the statutorily-designated officials (Gov. Code, § 915, subd. (a)), or

21

that those officials received her claim. Instead, Ana argues: (1) the Sheriff's Department had a duty to respond to the letters her counsel sent to the head of the Sheriff's Department and/or forward the letters to the appropriate officials (here, the Los Angeles County Board of Supervisors); (2) she substantially complied with the relevant statutes; and (3) Ana's claims were not subject to the claim presentation requirement because she sued Garrard not only as an employee of the LASD, but also in her individual capacity. Applying the principles discussed above, we disagree.

First, Ana cites no authority for the proposition that the Sheriff's Department had an obligation to forward the letters to the officials designated in the Government Claims Act or to notify her counsel that the letters were misdirected. We decline to impose such an obligation. It is contrary to both the plain language of Government Code section 915, subdivision (a) and our Supreme Court's strict construction of the procedures set forth in the Government Claims Act. (See *DiCampli-Mintz, supra*, 55 Cal.4th at p. 991, fn. omitted ["The claimant bears the burden of ensuring that the claim is presented to the appropriate public entity. [Citation.]"].)

Second, Ana does not allege in the 4AC that the "clerk, secretary, auditor, or board" ever actually received the claim as required by Government Code section 915, subdivision (e)(1). In her opening brief, she contends "Plaintiffs must assume that Sheriff Baca fulfilled his obligation, as a public servant, and forwarded the letters to the Board of Supervisor[s]." We will neither assume that the Sheriff had such an obligation, nor that he fulfilled this purported obligation. Thus, as in *DiCampli-Mintz*, Ana's claims are barred because "neither section 915(a)'s specific requirements for compliance, nor section 915(e)(1)'s provision deeming actual receipt to constitute compliance, were satisfied." (*DiCampli-Mintz, supra*, 55 Cal.4th at pp. 991-992.)

22

Finally, we reject Ana's alternative contention that compliance with the Government Claims Act was not necessary because she sued Garrard in her individual capacity in addition to her official capacity. Notwithstanding Ana's characterization of her claims, it is clear she sued Garrard "for injury resulting from an act or omission in the scope of [her] employment." (Gov. Code, § 950.2.) "For the purpose of the claim statute, a public employee is acting in the course and scope of his [or her] employment 'when he [or she] is engaged in work he [or she] was employed to perform or when the act is an incident to his [or her] duty and was performed for the benefit of his [of her] employer and not to serve his [or her] own purposes or conveniences.' [Citations.] The phrase 'scope of employment' has been equated with the express or implied power of the public employee to act in a particular instance, and in evaluating his [or her] conduct to determine whether it is within the ambit of his [or her] authority we are to look not to the nature of the act itself, but to the purpose or result intended. [Citations.] If the object or end to be accomplished is within the employee's express or implied authority his [or her] act is deemed to be within the scope of his [or her] employment irrespective of its wrongful nature." (*Neal v. Gatlin* (1973) 35 Cal.App.3d 871, 875, fn. omitted.)

Here, the allegations in the 4AC establish as a matter of law that Garrard was acting within the scope of her employment when she allegedly conspired with Howard and Lewenfus to suppress bids on Ana's residence to facilitate a pre-arranged sale to Lewenfus. Ana alleged Garrard "was in charge[ ] on behalf of the LASD for conduct [sic] the sale of the Subject Property. Accordingly, Defendant [Garrard] scheduled the sale for September 1, 2010. Subsequently, Defendant [Howard] entered into a conspiracy with Defendant [Garrard], in her individual capacity and as an employee of the LASD, and [Lewenfus] to misappropriate the Subject Property." Thus, according to the 4AC, Garrard was engaged in work she was employed to

23

perform—i.e., scheduling the sale of the property on behalf of the LASD—when she allegedly conspired with Howard and Lewenfus to fraudulently suppress bids on Ana's residence.

We therefore conclude Ana's claims against Garrard are barred by her failure to comply with the Government Claims Act.

## DISPOSITION

The judgments are affirmed. Howard and Garrard are awarded their costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

CURREY, J.

We concur:

MANELLA, P.J.

COLLINS, J.